1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PATRICK A. MISSUD, et al.,

        Plaintiffs,

   v.

OAKLAND COLISEUM JOINT
VENTURE, et al.

        Defendants.

Case No.: 12-02967 JCS

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS WITHOUT
PREJUDICE; GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION TO STRIKE
WITHOUT PREJUDICE**

## I.    INTRODUCTION

    Plaintiffs Patrick A. Missud[1] ("Missud" or "Plaintiff") brought this putative class action

against Defendants Oakland Coliseum Joint Venture ("OCJV"), City of Oakland, Alameda County,

and SMG Corporation ("SMG") ("Defendants").  Plaintiff alleges causes of action for (1) violations

of the Clean Water Act ("CWA"); (2) violations of the Resource Conservation and Reclamation Act

("RCRA"); (3) violations of the Americans with Disabilities Act ("ADA"); (4) violations of the

National Highway Safety and Traffic Act ("NHSTA"); (5) violations of the requirements established

by Cal-trans ("Caltrans");[2] (6) negligence; (7) breach of contract; (8) fraudulent inducement; and (9)

unfair business practices in violation of California Business and Professions Code section 17200

("UCL").  Presently before the Court are (1) Defendants' Motion to Dismiss the Complaint ("Motion

to Dismiss"); and (2) Defendants' Motion to Strike Portions of the Complaint ("Motion to Strike").

The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28

U.S.C. § 636(c).  For the reasons stated below, the Motion to Dismiss is GRANTED.  The Motion to

Strike is GRANTED IN PART and DENIED IN PART.

---

[1] Missud is an attorney representing himself and the putative class.
[2] The Complaint uses "Cal-trans" interchangeably with the "California Transportation Authority."  It appears the
Complaint is referring to the California Department of Transportation, Caltrans.

United States District Court
Northern District of California

II.     **BACKGROUND**

   A.     **The Complaint**

On the evening of June 7, 2011, the Oakland Coliseum ("Coliseum") hosted a concert featuring the band U2 ("Concert").  Complaint, 1:24-25.  Plaintiffs make the following allegations. OCJV cut services to maximize profits at the Concert.  *Id*. at 3:3-6.  Defendants were aware for approximately one year that the concert would be sold out such that 69,000 people would attend the concert.  *Id*. at 8:21-22.  Defendants were required to provide access to the venue, security, safe premises, sanitary facilities, light, ventilation, water, safety evacuation plans, ramps, walks, elevators, on-site emergency services, and parking.  *Id*. at 8:27-9:4.

Missud purchased two tickets to the Concert.  *Id*. at 5:1-2.  Upon arrival, Missud discovered that the necessary facilities were either severely deficient or non-existent, and that only one of his tickets would be honored by Defendants.  *Id*. at 5:2-4.  Plaintiff alleges that (1) the class consists of in excess of 400 similarly situated members; (2) the issues pertaining to each of the causes of action pled in the Complaint are common to all class members; (3) Missud's claims are typical of the claims of each member of the class because each member had a ticket to see the concert, was denied access to the Coliseum, and properly planned to allow ample time to access the Coliseum; and (4) Missud will fairly and adequately represent and protect the interests of the class and will retain additional counsel that is competent and experienced in class action litigation.  *Id*. at 5:6-8:11.  Plaintiff alleges that they have citizen standing to enforce federal laws.  *Id*. at 4:26-28.  Plaintiff seeks injunctive relief, restitution, and punitive damages.  *Id*. at 11:12-13:17.

Plaintiffs allege nine causes of action:

(1)     <u>Violation of the CWA</u>:  Plaintiff alleges that "Defendants willfully violated the CWA with discharges of storm water, untreated sewage, and other pollutants into the Oakland Estuary, a protected state and federal wetland."  *Id*. at 9:10-12.  Plaintiff alleges that the wetland is within the overflow parking lot.  *Id*. at 11:15-16.  To support this cause of action, Plaintiff alleges that Defendants operate an "overflow parking lot" during events at the Coliseum.  *Id*. at 5:18-21.  Plaintiff alleges that the overflow parking lot generates wastewater, at least in part because "greasy, leaking

2

cars" are parked there.  *Id*. at 5:20-21, 5:24-25.  Plaintiff alleges that the use of the overflow parking lot has created "industrial-type point-source pollution" such that it may require Defendants to perform an environmental impact report.  *Id*. at 6:7-9.  Plaintiff further alleges that the Oakland Estuary is being polluted by garbage discarded by Defendants' invitees because Defendants do not provide trash receptacles to manage the solid wastes discarded at the overflow parking lot.  *Id*. at 6:14-19.  Plaintiff alleges that Defendants should be subjected to Section 309 fines starting from the day they knew of the CWA violations, June 16, 2011.  *Id*. at 6:20-21.

      (2)    <u>Violation of the RCRA</u>:  Plaintiff alleges that "Defendants willfully violated the RCRA with discharges of storm water, untreated sewage, and other pollutants into the Oakland Estuary, a protected state and federal wetland."  *Id*. at 9:14-17.  Plaintiff alleges that the groundwater under the overflow parking lot is being contaminated by "various alkali compounds, antifreeze, and motor transmission oils."  *Id*. at 6:4-6:6.

      (3)    <u>Violation of the ADA</u>:  Plaintiff alleges that "Defendants willfully violated the ADA by failing to provide adequate walkways, railings, landings, ramps, and other components prescribed by the act."  *Id*. at 9:20-21.  Plaintiff alleges that the Coliseum is open to the public and offered for use by the City of Oakland and the County of Alameda.  *Id*. at 6:25-26.  Plaintiff alleges that Defendants violated the ADA because they do not provide lighting, bathrooms, walkways, ramps, transitions, or safety systems at or around the overflow parking lot.  *Id*. at 7:1-6.  Plaintiff also alleges that there are no ADA compliant facilities, curbs, walks, handrails, or ramps between the overflow parking lot and the Coliseum.  *Id*. at 11:21-22.  In addition, Plaintiff alleges that minimum walk widths, ascent angles, and railings are non-existent.  *Id*. at 11:24-25.

      (4)    <u>Violation of the NHSTA</u>:  Plaintiff alleges that "Defendants willfully violated the NHSTA by failing to provide adequate walkways, railings, landings, ramps, and other components which require separation from vehicular traffic, roadways, and thoroughfares as prescribed by the Act."  *Id*. at 9:24-26.  Plaintiff elaborates that pedestrians using the overflow parking lot are forced to "share the same vehicular path" with traffic.  *Id*. at 12:1-3.

(5) <u>Violation of Caltrans Requirements</u>:  Plaintiff alleges that "Defendants willfully violated [Caltrans] safety codes by failing to provide adequate pedestrian walkways, railings, landings, ramps, and other components which require separation from vehicular traffic, roadways, and thoroughfares as prescribed by the state." *Id*. at 10:2-5.  This claim appears based on the same underpinning as the NHTSA claim:  That pedestrians using the overflow parking lot are forced to "share the same vehicular path" with traffic. *Id*. at 12:1-5.

(6) <u>Negligence</u>:  Plaintiff alleges that Defendants had a duty to provide "adequate services" to invitees.  *Id*. at 10:7.  Plaintiff alleges that Defendants did not provide adequate services. *Id*. at 10:7-9.  Plaintiff alleges that Defendants failure to provide adequate services caused them to be "effectively barred" from attending the concert.  *Id*. at 10:9-11.  Plaintiff alleges that they were damaged in an amount to be proven at trial.  *Id*. at 10:11-13.  Plaintiff alleges that the overflow parking lot lacks lighting and contains "mounds of refuse, deep water-filled potholes, cavernous ruts, collapsed chain link fencing, slick mud, assorted other trip and slip hazards, and rusted barbed wire surrounding [its] perimeter." *Id*. at 12:12-16.  Plaintiff seeks damages for all those physically injured by the premises or barred from attending the Coliseum by "mismanagement of premises under [Defendants'] control, including their 'overflow parking lot.'" *Id*. at 12:20-26.

(7) <u>Breach of Contract</u>:  Plaintiff indirectly alleges that they entered a contract with Defendants when they purchased licenses, tickets, from Defendants.  *Id*. at 10:15.  Plaintiff alleges that they performed under the contract by timely arriving at the Coliseum.  *Id*. at 10:15-16.  Plaintiff alleges that Defendants breached the contracts by "constructively voiding" the licenses. *Id*. at 10:16-17.  Plaintiff explains that Defendants did not provide sufficient staffing or amenities to accommodate the 69,000 invitees they knew would be attending the concert.  *Id*. at 10:18-19.  Plaintiff also alleges some tickets were not honored, and that Defendants sold more tickets than they could reasonably accommodate.  *Id*. at 12:27-28, 13:5-7.  Plaintiff also alleges that Defendants made improper staffing assumptions.  *Id*. at 7:23-25.

(8) <u>Fraudulent Inducement</u>:  Plaintiff alleges that "Defendants knowingly oversold the Concert." *Id*. at 10:23.  Plaintiff explains that Defendants knew they did not have sufficient amenities

United States District Court
Northern District of California

1  to accommodate 69,000 invitees but misrepresented that they could do so, inducing Plaintiff to buy

2  tickets that Defendants knew would not be honored.  *Id*. at 10:23-26.

3       (9)   <u>UCL</u>:  Plaintiff alleges that "Defendants engaged in fraudulent acts by selling more

4  Licenses for the Concert at the Venue than they were capable of accommodating with their facilities

5  and amenities.  Further, the Defendants advertised the Concert in a way which misled the Plaintiffs-

6  Invitees to believe that their Licenses, once bought, would be honored at the Venue for the Concert."

7  *Id*. at 11:2-7.  Plaintiff alleges that Defendants' unfair, unlawful, and deceptive acts and practices have

8  caused Plaintiff damages in an amount to be shown at trial.  *Id*. at 11:7-9.

9      **B.**    **Defendants' Motions**

10         **1.**    **Motion to Dismiss**

11      First, Defendants assert that Missud cannot act as class representative and class counsel.

12  Motion to Dismiss, 1 n.1 (citing *Best Buy Stores, L.P. v. Superior Court*, 137 Cal.App.4th 772, 774,

13  40 Cal.Rptr.3d 575 (2006)).

14      Second, Defendants argue that Plaintiff's claims against the City of Oakland and Alameda

15  County are barred by sovereign immunity.  *Id*. at 7.  Defendants assert that the Eleventh Amendment

16  bars federal actions against unconsenting states when brought by their own citizens.  *Id*. (citing *Hans

17  v. Louisiana*, 134 U.S. 1, 9-21, 10 S.Ct. 504, 33 L.Ed. 842 (1890)).  Defendants contend that a court

18  must consider several factors to determine whether a governmental agency is an arm of the state that

19  can avail itself to the protections of the Eleventh Amendment.  *Id*.  These factors include:  (1) whether

20  a money judgment would be satisfied out of state funds; (2) whether the entity performs central

21  government functions; (3) whether the entity may sue or be sued; (4) whether the entity has the power

22  to take property in its own name or only in the name of the state; and (5) the corporate status of the

23  entity.  *Id*. (citing *In re Lazar*, 237 F.3d 967, 982 (9th Cir. 2001)).  Defendants argue that sovereign

24  immunity would apply here because factors one, two, and five are met and Plaintiff has not alleged

25  that factors three and four are lacking.  *Id*. at 8.

26      Third, Defendants argue that suit against City of Oakland and Alameda County for money or

27  damages is barred because Plaintiff failed to plead compliance with California's Tort Claims Act

28

United States District Court
Northern District of California

1  ("TCA").  *Id*. at 8-10.  Defendants state that the TCA bars suit for money or damages, in both tort and

2  contract, against a public entity until a written claim therefor has been presented and acted upon.  *Id*.

3  at 8-9 (citing Cal. Gov. Code § 945.4; *Baines Pickwick Ltd. v. City of Los Angeles*, 72 Cal.App.4th

4  298, 300, 85 Cal.Rptr.2d 74 (1999)).  Defendants outline the information required in the claim, and

5  state that the claim must be submitted within six months of the cause of action.  *Id*. at 9 (citing Cal.

6  Gov. Code §§ 910, 911.2(a)).  Defendants contend that these requirements must be satisfied even in

7  the face of the public entity's actual knowledge of the circumstances surrounding the claim.  *Id*.

8  (citing *City of Stockton v. Superior Court*, 42 Cal.4th 730, 738, 68 Cal.Rptr.3d 295, 171 P.3d 20

9  (2007)).  Defendants contend that Plaintiff failed to allege compliance with the relevant sections of the

10  Government Code.  *Id*.  In addition, Defendants contend that every material fact must be pled with

11  particularity to state a claim against a public entity.  *Id*. at 8.

12  Fourth, Defendants contend that Plaintiff lacks standing to bring his first through fifth and his

13  ninth causes of action.  *Id*. at 12-15.  Defendants state that standing is a jurisdictional question that

14  precedes the merits of a plaintiff's claim.  *Id*. at 13 (citing *Maya v. Centex Corp.*, 658 F.3d 1060, 1068

15  (9th Cir. 2011)).  Defendants elaborate that a plaintiff must demonstrate (1) that the plaintiff suffered

16  an injury in fact; (2) that there is a causal connection between the injury and the conduct complained

17  of; and (3) that a favorable court decision will likely redress the injury.  *Id*. (citing *Lujan v. Defenders*

18  *of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).  In addition, plaintiffs

19  asserting causes of action under the UCL must have suffered injury in fact and lost money or property

20  to have standing.  *Id*. (citing Cal. Bus. & Prof. Code §§ 17204, 17535).  Defendants contend that the

21  only injury referenced in the Complaint is that Missud purchased two tickets to the Concert, found the

22  facilities deficient or non-existent, and only one of his tickets was honored.  *Id*. at 14.  Defendants

23  argue that this injury is not related to any purported violation of the CWA, the RCRA, the ADA, the

24  NHTSA, the Caltrans regulations, or the UCL.  *Id*.  In addition, Defendants state that Plaintiff failed

25  to allege that he is disabled, and thus is not protected by the ADA.  *Id*. (citing 42 U.S.C. § 12101 *et*

26  *seq*.; *Kohler v. CJP Ltd.*, 818 F.Supp.2d 1169, 1174 (C.D. Cal. 2011).

27  //

28

United States District Court
Northern District of California

1   Defendants addressed each of Plaintiff's causes of action:

2   (1)    Violation of the CWA:  Defendants contend that Plaintiff failed to plead compliance

3   with the required statutory notice provisions in the CWA.  *Id.* at 11.  Defendants argue that the CWA

4   prohibits the discharge of any pollutant from a point source into navigable waters, unless the

5   discharger possesses a valid permit authorizing the specific discharge.  *Id.* (citing 33 U.S.C. §§

6   1311(a), 1342).  Defendants assert that the CWA provides for private citizen enforcement of its

7   provisions against polluters, but the private party must give least 60 days notice of the alleged

8   violation to the Environmental Protection Agency, the state, and the alleged violator prior to filing

9   suit.  *Id.* at 11-12 (citing 33 U.S.C. § 1365(a)-(b)).  Defendants state that the notice requirement is

10  jurisdictional.  *Id.* at 12 (citing *Waterkeepers v. N. Cal. v. AG Indus. Mfg., Inc.*, 375 F.3d 913, 916

11  (9th Cir. 2004)).

12  (2)    Violation of the RCRA:  Defendants state that the RCRA is designed to reduce the

13  generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste

14  to minimize the threat to human health and the environment.  *Id.* (citing 42 U.S.C. § 6902).

15  Defendants argue that plaintiffs are required to provide notice to the relevant parties 60 days before

16  filing suit.  *Id.* (citing 42 U.S.C. § 6972(b)(1)(A)).  In addition, Defendants contend that a 90 day

17  notice is required for actions alleging contribution to present or past RCRA violations.  *Id.* (citing 42

18  U.S.C. § 6972(b)(2)(A)).  Defendants assert that, absent compliance with the relevant notice

19  provisions, the court must dismiss the case.  *Id.* (citing *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d

20  1149, 1160 (9th Cir. 1989) (90 day notice requirement is jurisdictional); *Hallstrom v. Tillamook

21  County*, 493 U.S. 20, 26, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989)).

22  (3)    Violation of the ADA:  Defendants state that Plaintiff has failed to state a cause of

23  action under the ADA because they have not alleged that Plaintiff is disabled or that Plaintiff was

24  deprived of full and equal access because of a disability.  *Id.* at 14.

25  (4)    Violation of the NHTSA:  Defendants contend that the National Highway and Traffic

26  Safety Act ("NHTSA"), to which they believe Plaintiff refers, does not provide a private right of

27  action.  *Id.* at 15 (citing 49 U.S.C. § 30162)).

28

7

United States District Court
Northern District of California

(5)    <u>Violation of Caltrans Requirements</u>:  Defendants assert that Plaintiff's reference to these requirements is unclear, as there are no statutory references, and they are unable to understand the authority Plaintiff relied on.  *Id*.

(6)    <u>Negligence</u>:  Defendants argue that Plaintiff's negligence claim is barred by the economic loss rule.  *Id*. at 10.  Defendants state that the economic loss rule generally bars tort claims for contract breaches.  *Id*. (citing *Erlich v. Menezes*, 21 Cal.4th 543, 552, 87 Cal.Rptr.2d 886, 981 P.2d 978 (1999).  Defendants note that products liability cases and breaches of non-contractual duties are exceptions to the economic loss rule.  *Id*. (citing *United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp.*, 660 F.Supp.2d 1163, 1180-1181 (C.D. Cal. 2009)).  Defendants further note that the second exception, for breaches of non-contractual duties, only applies if there is a breach of a tort duty apart from the general duty not to act negligently.  *Id*. (citing *United Guar. Mortg. Indem. Co.*, 660 F.Supp.2d at 1180-1181).  Defendants assert that California courts have found exceptions to the economic loss rule in the non-contractual duty category where the conduct (1) breaches a duty imposed by some special or confidential relationship; (2) breaches a duty not to commit certain intentional torts; or (3) was undertaken intending or knowing that such a breach will cause severe, immitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages.  *Id*. at 10-11 (citing *United Guar. Mortg. Indem. Co.*, 660 F.Supp.2d at 1181).  Defendants argue that the negligence claims at issue here are not conceptually distinct from the asserted contract and do not involve the breach of non-contractual duties in such a way to fall into an exception to the economic loss rule.  *Id*. at 11.  In addition, Defendants contend that Plaintiff did not sufficiently plead what duty Defendants were under or how they breached that duty.  *Id*. at 6.

(7)    <u>Breach of Contract</u>:  Defendants contend that Plaintiffs' breach of contract claim fails because Plaintiff did not sufficiently allege each:  (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damage to plaintiff.  *Id*. at 15 (citing *Zepeda v. OneWest Bank FSB*, 2011 WL 6182951 (N.D. Cal. Dec. 13, 2011)).  Defendants assert that a complaint alleging breach of a written contract must set out the exact words of the contract in the body of the complaint or attach a written instrument and incorporate that instrument by

United States District Court
Northern District of California

1    reference.  *Id.* (citing *Susilo v. Wells Fargo Bank, N.A.*, 796 F.Supp.2d 1177, 1188 (C.D. Cal. 2011);

2    *Twaite v. Allstate Insurance Co.*, 216 Cal.App.3d 239, 253, 264 Cal.Rptr. 598 (1989)).  Defendants

3    argue that the Complaint is insufficient because it does not set out the essential terms of the purported

4    agreement.  *Id.* at 16.

5           (8)    <u>Fraudulent Inducement</u>:  Defendants state that the elements of fraud are:  (1) a

6    misrepresentation; (2) scienter or knowledge of its falsity; (3) intent to induce reliance; (4) justifiable

7    reliance; and (5) resulting damage.  *Id.* (citing *Lazar v. Superior Court*, 12 Cal.4th 631, 638, 49

8    Cal.Reptr.2d 377, 909 P.2d 981 (1996)).  Defendants argue that Plaintiff's allegations must be

9    sufficiently detailed to meet the Rule 9(b) pleading standard for fraud.  *Id.* (citing *Parino v. BidRack,*

10    *Inc.*, 838 F.Supp.2d 900, 906 (N.D. Cal. 2011)).  Defendants argue that Plaintiff failed to meet that

11    standard because the Complaint contains no allegations about the time, place, method of ticket

12    purchase, or any other information about how Defendants "knew" ticket holders would be turned

13    away from the concert.  *Id.* at 17.  In addition, Defendants assert that, to recover for a claim of fraud,

14    the plaintiff must show that the defendant committed fraudulent conduct independent of the contract.

15    *Id.* at 16 (citing *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 988, 22 Cal.Rptr.3d

16    352, 102 P.3d 268 (2004)).  Defendants assert that the Complaint also fails because it does not contain

17    any allegations of fraudulent conduct independent of the purported contract.  *Id.* at 17.

18           (9)    <u>UCL</u>:  Defendants assert that Plaintiff fail to allege facts that could support a finding

19    that Defendants engaged in unlawful, unfair, or fraudulent business practices.  *Id.* at 18.  Defendants

20    contend that unfair conduct must be tethered to some legislative policy or proof of some actual or

21    threatened impact on competition such that the harm was not outweighed by the utility.  *Id.* at 17-18

22    (citing *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007); *Cel-Tech*

23    *Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 184, 187, 83

24    Cal.Rptr.2d 548, 973 P.2d 527 (1999)).  Defendants also assert that UCL claims are subject to the

25    heightened pleading standard in Rule 9(b).  *Id.* at 18.  Defendants argue that Plaintiff's claim fails

26    because they make only conclusory allegations that Defendants advertised the Concert in a way that

27

28

1    was misleading without alleging any details.  *Id.* at 18-19.  Defendants also contend that Plaintiff

2    lacks standing to bring this claim.  *Id.* at 14-15.

3                    **2.       Motion to Strike**

4           Defendants move to strike Plaintiff's prayer for punitive damages, class claims, and references

5    to internet addresses from the Complaint.  Motion to Strike, 3-13.  Defendants assert that, as the

6    moving party, they must show that (1) the challenged allegations are clearly unrelated to the pleader's

7    claims; and (2) the moving party would be prejudiced by allowing the allegations to stay in the

8    pleading.  *Id.* at 3 (citing *In re UTStarcom, Inc. Securities Litigation*, 617 F.Supp. 964, 969 (N.D. Cal.

9    2009)).

10          Defendants contend that the prayer for punitive damages must be stricken because the

11   Complaint does not allege any facts that demonstrate Defendants acted with malice, oppression, or

12   fraud.  *Id.* at 5.  Defendants argue that this renders the prayer for punitive damages insufficient.  *Id.* at

13   4-5 (citing Cal. Civ. Code § 3294(a); *Brousseau v. Jarrett*, 73 Cal.App.3d 864, 872, 141 Cal.Rptr. 200

14   (1977)).

15          Defendants assert that they may move to strike class allegations where the complaint

16   demonstrates that a class action cannot be maintained on the facts alleged.  *Id.* at 5 (citing *Sanders v.*

17   *Apple Inc.*, 672 F.Supp.2d 978, 989-990 (N.D. Cal. 2009)).  Defendants argue that the Complaint does

18   not adequately allege who would be members of the class or upon what basis the purported class

19   could be found.  *Id.* at 6.  In addition, Defendants contend that individual inquiries, such as the context

20   of the ticket purchases and any reliance, would predominate.  *Id.*  Moreover, Defendants assert that a

21   class action would be improper because Missud cannot act as both class representative and class

22   counsel.  *Id.* (citing *Best Buy*, 137 Cal.App.4th at 774, 40 Cal.Rptr.3d 575; *Apple Computer, Inc. v.*

23   *Superior Court*, 126 Cal.App.4th 1253, 24 Cal.Rptr.3d 818 (2005)).

24          Defendants note that the Complaint includes allegations entitled "Judicial Notice of Web

25   Based Information."  *Id.* at 7 (citing Complaint, 4:10-23).  Defendants argue that the references to the

26   web addresses should be stricken because the Complaint does not make allegations as to how the

27   contents of the websites support Plaintiffs' allegations.  *Id.*  In addition, Defendants contend that the

28

                                                  10

United States District Court
Northern District of California

1  unnecessary and generic use of web addresses creates confusion and introduces immaterial,

2  impertinent, and redundant information to the extent that Plaintiffs make similar allegations elsewhere

3  in the Complaint.  *Id*.  To the extent that Plaintiffs request judicial notice of the contents of the

4  websites, Defendants dispute the reliability, authenticity, and admissibility of their contents.  *Id*.

5  Defendants elaborate that the content on the websites (1) cannot be accurately and readily determined;

6  and (2) comes from sources whose accuracy is questioned.  *Id*.

7        **C.**      **Opposition**

8        Plaintiff filed a consolidated Opposition to Defendants' Motions to Strike and Dismiss

9  ("Opposition").[3]  Plaintiff begins by addressing the Motion to Strike.  First, Plaintiff argues that the

10  Complaint and supporting documents, including pictures, contain specific factual allegations

11  supporting an inference of fraud, oppression, or malice.  Opposition, 9.  Plaintiff elaborates that the

12  hazards described in the overflow parking lot show malice.  *Id*. at 9-10.  Plaintiff also states that the

13  absence of restroom facilities in the overflow parking lot causes raw sewage to be introduced into a

14  wetland when patrons "address[] their 'nature calls.'"  *Id*. at 10-11.  Moreover, Plaintiff contends that

15  Defendants oversold the concert, leaving many patrons, including Missud's wife, sitting in traffic, in

16  such a way that demonstrated fraud and oppression.  *Id*. at 9-11.  Plaintiff explains that Defendants

17  have been aware of their inability to staff large events for years, pointing to a history of problems with

18  crowd control and traffic congestion at Raiders games.  *Id*. at 11.

19        Second, Plaintiff states that the web addresses in the pleadings are primarily for the benefit of

20  third parties who are receiving copies of the pleadings in electronic format.  *Id*. at 9.  The web

21  addresses will facilitate their independent research.  *Id*.  As to one citation to Wikipedia, Plaintiff

22  contends that Wikipedia is not cited as authority but the Wikipedia page in turn contains links that

23  ultimately cite to federal regulations.  *Id*.  Plaintiff also addresses citations made to SMG's and the

24  City of Oakland's own websites, stating that the contents of those websites are admissions.  *Id*. at 10.

25  As to two citations containing commentary regarding traffic problems surrounding the Concert, one of

26  which was authored by Missud, Plaintiff contends that the websites support the Complaint and its

27  

28        [3] The first seven and a half pages of the Opposition focus on Plaintiff's arguments regarding corruption in the judiciary.

1    class allegations by demonstrating numerosity.  *Id.* at 13.  In addition, Plaintiff offers to testify to the

2    accuracy of the information.

3           Third, Plaintiff contends that the claim is suitably pled as a class action because it identified

4    400 or so class members who each lost their ticket value because their seat license was not honored as

5    a result of Defendants' breaches.  *Id.* at 12.  Plaintiff also argues that each class member is also a

6    member of the taxpaying public who helped to subsidize the recovery of the Oakland estuary.  *Id.*  In

7    addition, Plaintiff argues that fraud in the inducement was adequately pled because OCJV represented

8    that all tickets would be honored by offering them for sale.  *Id.*  Plaintiff states that all class members

9    relied on that representation, paid consideration, arrived timely, and were unable to access the

10   Coliseum.  *Id.*  Plaintiff elaborates that his wife's ticket was not honored until three hours after the

11   Concert began.  *Id.*  Plaintiff states that, to the extent he cannot serve as class counsel and class

12   representative, his wife or any of dozens of other class members can serve as representatives.  *Id.*

13          Plaintiff then turns his attention to the Motion to Dismiss.  First, Plaintiff asserts that suits in

14   federal courts against officials acting on behalf of states may proceed where the state acted

15   unconstitutionally.  *Id.* at 13 (citing *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714

16   (1908)).  Plaintiff contends that, in any event, cities and counties are not arms of the state and

17   therefore cannot assert sovereign immunity.  *Id.* at 13-14 (citing *Jinks v. Richland County*, 538 U.S.

18   456, 123 S.Ct. 667, 155 L.Ed.2d 631 (2003); *Lake Country Estates, Inc. v. Tahoe Regional Planning*

19   *Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979)).  Second, Plaintiff asserts that several

20   pictures demonstrate the dangers posed by the overflow parking lot and the pollution it generates.  *Id.*

21   at 14-15.[4]

22          Third, Plaintiff contends that OCJV was given notice of its statutory violations more than 60

23   days in advance.  *Id.* at 14 (citing Declaration of Patrick Missud in Support of Opposition ("Missud

24   Declaration I"), Exs. 1, 2).

25          Fourth, Plaintiff addresses Defendants' assertion that the Complaint lacks the factual

26   allegation that Missud was turned away from the concert.  *Id.* at 15.  Plaintiff states that he was

27   ────────────────────────

28   [4] The pictures were filed as an attachment to Plaintiff's "Affidavit of Service for Complaint and Waivers" on August 6, 2012.  Dkt. No. 5.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   talking to his wife for three hours as she sat in "the OCJV'[s] mismanaged[ ]traffic." *Id*.  As a result,

2   Plaintiff contends that the "Missuds paid for two tickets and only one of them was timely honored

3   through no fault of their own." *Id*.  Plaintiff elaborates that he and his wife arrived separately at the

4   Coliseum with time to spare, but because OCJV decided that the roads surrounding the Coliseum

5   "should double as parking lots" his wife was constructively locked out of the venue.  *Id*.

6       Fifth, Plaintiff asserts that he did plead OCJV owns the overflow parking lot.  *Id*.  Sixth,

7   Plaintiff asserts that he did plead how certain pollutants may have been deposited into the watershed.

8   *Id*. at 16.  Plaintiff explains that he left cakes of tar in the overflow lot because, as he drove his wife's

9   car, it bottomed out several times in the lot.  *Id*.

10      Seventh, Plaintiff asserts that he is in fact disabled based on a variety of physical limitations,

11  although he refuses to obtain a "disabled person placard."  *Id*. at 16-17.  Plaintiff further states that he

12  suffered an injury under the ADA because at least one of the Defendants failed to make the overflow

13  parking lot ADA-compliant.  *Id*. at 19.  Eighth, Plaintiff asserts that OCJV was under a duty to inspect

14  for hazards to protect their invitees.  *Id*. at 17.  Ninth, Plaintiff asserts that they notified the OCJV of

15  their claims within one month of the Concert, satisfying the six month notice requirement.  *Id*. at 17-

16  18.  Tenth, Plaintiff asserts that Defendant SMG has admitted that it can forecast ticket staffing, so it

17  should have staffed the event appropriately.  *Id*. at 18.

18      Eleventh, Plaintiff asserts that the economic loss rule does not apply because (1) OCJV

19  breached their duties owed as inn keepers or entities that offered facilities under their control for

20  financial gain; (2) breached their absolute duty not to contaminate federally protected lands; and (3)

21  failed to adequately staff "a once in a lifetime event."  *Id*.

22      Twelfth, Plaintiff asserts standing under *Lujan* because he, and other Bay Area residents, paid

23  for restoration of the Oakland Estuary and enjoy walking there.  *Id*. at 18-19.  Plaintiff asserts that the

24  nature of the garbage in the Estuary, including plates, cups, and sporks with Coliseum logos, the

25  environmental degradation is fairly traceable to Defendants economic enterprise.  *Id*. at 19.  Plaintiff

26  asserts that they are unaware which Defendant cut a channel to allow fluid to flow into the Oakland

27  estuary.  *Id*. at 20.

28

Thirteenth, Plaintiff states that he has made out a contract claim distinct from their statutory causes of action.  *Id*. at 19-20.  Plaintiff states that the tickets or seat licenses referenced in the Complaint are the relevant contracts.  *Id*. at 20.  Plaintiff states that he performed by timely arriving at the venue with ticket in hand.  *Id*.  Plaintiff states that the Complaint references lack of services or amenities such as parking as breaches.  *Id*.  Plaintiff asserts that the Complaint references damages such as lost ticket values, limo fees, and money spent on gas.  *Id*.  Plaintiff states that OCJV is aware of the terms of the contract, and that the ticket references where the terms can be found online.  *Id*.  In addition, Plaintiff contends that the implied covenant of good faith and fair dealing is breached were related services are inadequate.  *Id*. at 20-21.  Plaintiff also contends, referencing news articles and a complaint, that this case is governed by litigation arising in Texas arising out of the 2011 Super Bowl.  *Id*. at 21-22 (citing Missud Declaration I, Exs. 3, 4).[5]

Fourteenth, Plaintiff states that he adequately pled fraudulent inducement because (1) the offer of the 69,000th ticket implies that it will be honored because OCJV has the capacity to accommodate the purchaser; (2) the OCJV knows of its history of failing to accommodate crowds at Raiders games; (3) purchasers paid for tickets based on the implied promise that they would be honored; (4) purchasers justifiably relied on OCJV's representation that the Coliseum could hold 69,000 people; and (5) thousands of purchasers were stranded for hours prior to the concert.  *Id*. at 22.  Plaintiff asserts that this was fraud independent of the contract because none of the purchasers would have entered the contract had they known they would be unable to access the venue.  *Id*.

Fifteenth, Plaintiff asserts that they have a claim under the UCL because Defendants violated public policies favoring public health and safety by creating a traffic jam that would have prevented any sort of disaster response into or out of the Coliseum.  *Id*. at 23.

### D.    Replies

In support of their Motion to Dismiss, Defendants contend that Plaintiff impermissibly attempted to add new allegations to his Complaint through his Opposition brief.  Reply in Support of Motion to Dismiss, 2 (citing *Ruiz v. Laguna*, 2007 WL 1120350 (S.D. Cal. Mar. 28, 2007); *Fabbrini*

---

[5] Plaintiff appears to be referring to *Simms v. Jones*, 879 F.Supp.2d 595 (N.D. Tex. 2012).

United States District Court
Northern District of California

1  *v. City of Dunsmuir*, 544 F.Supp.2d 1044, 1050 (E.D. Cal. 2008)).  Defendants argue that the Court

2  should only consider the factual allegations raised in the Complaint and those facts properly subject to

3  judicial notice in deciding the present Motions.  *Id*.  Defendants proceed to argue that the Opposition

4  does not refute any of the arguments set forth in their moving papers.  *Id*. at 3-7.  However,

5  Defendants reserve their argument that the City of Oakland and Alameda County are entitled to

6  governmental immunity, and instead will assert it as an affirmative defense if Plaintiff's claims

7  survive the pleadings.  *Id*. at 7.

8  In support of their Motion to Strike, Defendants contend that Plaintiff again made new

9  allegations that were not made in their Complaint.  Reply in Support of Motion to Strike, 2-3.

10  Defendants contend that the Opposition has not controverted the position in their Motion, and cannot

11  act to amend the allegations in the Complaint.  *Id*. at 3-4.  Defendants also argue that Plaintiff cannot

12  recover attorney's fees because he is proceeding pro per.  *Id*. at 5-6.

13  **III.    JUDICIAL NOTICE**

14  The standard for judicial notice is set forth in Rule 201 of the Federal Rules of Evidence,

15  which allows a court to take judicial notice of an adjudicative fact not subject to "reasonable dispute,"

16  either because it is "generally known within the territorial jurisdiction of the trial court" or it is

17  "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably

18  be questioned."  Fed. R. Evid. 201.  As a general rule, the court "may not consider any material

19  beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *U.S. v. Corinthian Colleges*, 655 F.3d

20  984, 998-99 (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).

21  However, the court may consider unattached evidence on which the complaint "necessarily relies" if:

22  "(1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no

23  party questions the authenticity of the document."  *Id*. at 999 (citing *Marder v. Lopez*, 450 F.3d 445,

24  448 (9th Cir. 2006)).  In addition, the court may take judicial notice of "matters of public record," but

25  not facts that may be "subject to reasonable dispute."  *Id*. (citing *Lee*, 250 F.3d at 689).

26

27

28

15

United States District Court
Northern District of California

1    Defendants request judicial notice of two court orders declaring Missud a vexatious litigant.

2  Defendants' Request for Judicial Notice, 1-2.  Plaintiff joins in this request.  Opposition, 2-8.  The

3  Court takes judicial notice of these court orders because they are matters of public record.

4    Plaintiff references eleven web pages in his Complaint.  Plaintiff makes some effort to

5  describe the contents of the websites, quoting from two of them, but Plaintiff does not attach copies of

6  the contents of any of the eleven websites.  The Ninth Circuit has applied the incorporation by

7  reference doctrine to consider the contents of a website where the defendant filed a CD-ROM

8  containing a digital replica of the relevant portions of the website in question.  *Knievel v. ESPN*, 393

9  F.3d 1068, 1076-1077 (9th Cir. 2005).  There, the plaintiffs had explicitly referenced the website in

10  question and attached a picture from one page of the website as the basis for their defamation suit.  *Id*.

11  The additional web contents were provided by the defense to put the picture in context and were

12  essential to the underlying defamation claim.  *Id*.  No party questioned the authenticity of the website.

13  *Id*.

14    The Court concludes that incorporation by reference of the unattached documents, the contents

15  of the websites, is improper because Plaintiff does not necessarily rely on the documents and they are

16  not central to Plaintiff's claim.  Three of the internet references are citations to Wikipedia pages that

17  Plaintiff asserts support his statements of law.[6]  The Complaint does not necessarily rely on the

18  contents of these Wikipedia articles, and the articles are not central to any of Plaintiff's claims.

19    Two of the internet references are separate pages of what Plaintiff contends is Defendant

20  SMG's own website.[7]  Plaintiff includes the internet references as citation to demonstrate that the web

21  pages contain statements Plaintiff has quoted in his Complaint.  The Court will consider the

22  allegations in the Complaint – that SMG makes the representations quoted in the Complaint – but it

23  will not consider the contents of the web pages.  The contents of those web sites are not centrally

24  related to Plaintiff's claim, there is no allegation that any Plaintiff relied on these webpages or was

25  

26  [6] The pages are:  (1) http://en.wikipedia.org/wiki/Citizen_suit; (2)
http://en.wikipedia.org/wiki/Clean_Water_Act#cite_note-7; and (3)

27  http://en.wikipedia.org/wiki/Traffic_safety#Designing_for_pedestrians_and_cyclists.
[7] The pages are:  (1) http://smgworld.com/company_history.aspx; and (2)

28  http://smgworld.com/operations_development.aspx.

United States District Court
Northern District of California

1   misled by these webpages, or even visited these webpages, prior to purchasing tickets to the Concert.

2   The Complaint contains a citation to the Coliseum's webpage for similar purposes, and that citation

3   will be treated in the same way.[8]

4       Two of the internet references are intended to demonstrate that the putative class will exceed

5   four hundred members.  One is a blog in which unverifiable posters have commented about parking

6   issues surrounding the Concert.[9]  The other is the home page to Plaintiff's own website, which solicits

7   e-mail contact regarding parking issues at the concert.[10]  None of the web content is central to

8   Plaintiff's claims, and the Complaint does not necessarily rely on it.  Once again, the Court will

9   consider the allegations made in the Complaint but not the contents of the web pages.

10      One of the internet references is to Google Maps, with instructions for the Court to follow to

11  view a street near the Coliseum and overflow lot.  The reference is intended to support the allegation

12  that the Coliseum's failure to supervise attendees is causing pollution and littering along the

13  surrounding streets.  Again, the images contained in the website are not central to Plaintiff's

14  Complaint and are not necessarily relied upon.  Nevertheless, the Court will consider the allegations

15  made in the Complaint.

16      One of the internet references is to a document, dated February 8, 2005, from the Community

17  and Economic Development Agency and Public Works Agency to the City of Oakland Office of the

18  City Administrator providing a status report concerning Measure DD and requesting certain

19  modifications to the Measure DD expenditure plan ("Report").  Plaintiff includes the reference to

20  support his allegation that taxpayer funds were used for reclamation projects, including the Oakland

21  Estuary.  The contents of this document are not central to any of Plaintiff's causes of action and the

22  Complaint does not necessarily rely on its contents.  In any event, the Court will consider the

23  allegations made in the Complaint.

24      One of the internet references is to an online news article, published July 13, 2010, intended to

25  show that the Concert received media coverage causing it to be sold out.[11]  As above, the article is not

26

27

28

---

[8] The address is:  http://www.coliseum.com/events/sports.php.
[9] The address is:  http://dustinkeirstead.blogspot.com/2011/06/u2-traffic-nightmare-masses-speak-part.html.
[10] The address is:  http://oaklandfiasco.com/.
[11] The address is:  http://www.pressdemocrat.com/article/20100713/ENTERTAINMENT/100719890.

1   central to Plaintiff's claims, and the Complaint does not necessarily rely on it.  The Court will

2   consider the allegations made in the Complaint but not the contents of the article.

3          Only one of the eleven web pages in the Complaint is the proper subject of judicial notice.

4   The Report is judicially noticed as a public record.  However, the Court does not rely on the Report in

5   deciding the present Motions.  The remaining web pages contain information that is not "capable of

6   accurate and ready determination by resort to sources whose accuracy cannot reasonably be

7   questioned."  The Wikipedia references, the news article, the blog commentary, and Plaintiff's

8   website contain information from sources that are unidentified and unverified.  As to the contents of

9   Defendants' purported web pages, the Court declines to take judicial notice of the contents of these

10  unverified web pages over Defendants objection.  Plaintiff argues that the statements are admissible

11  non-hearsay as party admissions.  However, the question at this juncture, resolution of a 12(b)(6)

12  motion, is not whether the statements are admissible as evidence but whether the contents are the

13  proper subject of judicial notice.  They are not.  Even so, to the extent the contents were alleged in the

14  Complaint the Court will treat those allegations as true and consider the contents alleged in resolving

15  the present Motions.[12]

16  **IV.    EVIDENTIARY OBJECTIONS**

17         Defendants object to both the Missud Declaration I and the Missud Declaration II.  These

18  declarations cannot be considered in ruling on a 12(b)(6) motion.  *See Corinthian Colleges*, 655 F.3d

19  at 998-999.[13]

20  //

21  //

22  //

23  //

24

25  [12] Plaintiff makes a litany of additional requests for judicial notice in their Opposition.  The majority of the requests pertain to prior actions in which Plaintiff was declared a vexatious litigant and have no bearing on the present case.  To the extent Plaintiff requests judicial notice of court filings that are a matter of public record the Court will grant judicial notice.  The Opposition also contains a number of web references to support its arguments.  The Opposition states that the links are to aid third parties receiving copies of the pleadings.  The Court does not treat these additional references as requests for judicial notice absent an explicit indication to the contrary.

26

27

28  [13] Likewise, the Court cannot consider the photographs filed in Docket Number 5 in ruling on the Motion to Dismiss.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## V.     ANALYSIS

### A.     Legal Standard

#### 1.     Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  However, a complaint does not need detailed factual allegations to survive dismissal.  *Id.*  Rather, a complaint need only include enough facts to state a claim that is "plausible on its face."  *Id.* at 570.  That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief.  *Id.* at 545 (noting that this requirement is

United States District Court

Northern District of California

1    consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader

2    is entitled to relief"). Generally, a plaintiff's statement in an opposition brief cannot amend the

3    complaint under Rule 15. *See Fabbrini*, 544 F.Supp.2d at 1050 (citing *Car Carriers, Inc. v. Ford*

4    *Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

5        The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if

6    no request to amend the pleading was made, unless it determines that the pleading could not possibly

7    be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)

8    (citations and internal quotation marks omitted).

9                 **2.**      **Rule 9(b)**

10       Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake,

11    a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P.

12    9(b). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy Rule 9(b)'s

13    heightened pleading requirements. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir.

14    2003). The plaintiff must include "the who, what, when, where, and how" of the fraud. *Id.* at 1106

15    (citations omitted). "The plaintiff must set forth what is false or misleading about a statement, and

16    why it is false." *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994). A claim for fraud must

17    be "specific enough to give defendants notice of the particular conduct which is alleged to constitute

18    the fraud charged so that they can defend against the charge and not just deny that they have done

19    anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

20       **B.**      **Motion to Dismiss**

21            **1.**      **Special Issues Pertaining to Alameda County and the City of Oakland**

22                 **a.**      **Governmental Immunity**

23       In their Reply, Defendants announce that they are no longer seeking dismissal on the basis of

24    governmental immunity. Reply in Support of Motion to Dismiss, 7. Instead, they reserve the

25    argument as an affirmative defense should Plaintiff survive the pleading stage. *Id.*

26    //

27    //

28

20

United States District Court
Northern District of California

b.      **The California Tort Claims Act**

i.      **Legal Background**

Under the California TCA, a plaintiff must file a claim for money or damages with a public entity before filing a lawsuit against the public entity or a public employee.  Cal. Gov't Code § 945.4; *State of California v. Superior Court of Kings County*, 32 Cal.4th 1234, 1243, 13 Cal.Rptr.3d 534, 90 P.3d 116 (2004) ("*Bodde*").  Lawsuits that seek monetary relief based on claims sounding in tort, as well as claims sounding in contract, are lawsuits for "money or damages."  *See City of Stockton v. Superior Court*, 42 Cal.4th 730, 738, 68 Cal.Rptr.3d 295, 171 P.3d 20 (2007).  Failure to allege facts demonstrating or excusing compliance with the claim presentation requirement is grounds for dismissal of a plaintiff's claims.  *Bodde*, 32 Cal.4th at 1245, 13 Cal.Rptr.3d 534, 90 P.3d 116.  Claims statutes must be satisfied even in the face of the public entity's actual knowledge of the circumstances surrounding the claim.  *City of Stockton*, 42 Cal.4th at 738, 68 Cal.Rptr.3d 295, 171 P.3d 20.

ii.      **Application to Facts**

Plaintiff alleges no facts in his Complaint demonstrating or excusing compliance with the claim presentation requirement.  In his Opposition, Plaintiff argues that he submitted a "detailed claim for the fiasco" one month after the concert and only filed this action after "the OCJV dragged it[s] corporate feet, stuck its head in the sand, and expected to skate as if nothing happened.  All pre-requisite actions were properly taken such that the contract and tort claims are properly pled, supported, and [not] procedurally barred."  Opposition, 17-18.  The Court need not determine whether these allegations would be sufficient to satisfy California Government Code section 945.4, because no allegations were made in the Complaint.  Plaintiff's tort and contract claims against the City of Oakland and Alameda County are dismissed with leave to amend.

2.      **Violation of the CWA**

a.      **Legal Background**

i.      **Notice Requirement**

A private citizen may commence a civil action on his own behalf under the CWA against any violator of the Act.  *Northern California River Watch v. Honeywell Aerospace*, 830 F.Supp.2d 760,

United States District Court
Northern District of California

765 (N.D. Cal. 2011) (citing 33 U.S.C. § 1365(a)).  The CWA requires a prospective plaintiff to give a 60-day notice to the proper parties – the Environmental Protection Agency Administrator, the state in which the violation is occurring, and the violator – before commencing suit against an alleged violator.  *Id.* (citing 33 U.S.C. § 1365(b)).  Compliance with the notice requirement is a jurisdictional necessity.  *Center for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 800 (9th Cir. 2008) (citing *Waterkeepers N. Cal. v. AG Indus. Mfg., Inc.*, 375 F.3d 913, 916 (9th Cir. 2004)).

### ii.    Article III Standing

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).  The Supreme Court has "held that environmental plaintiffs adequately allege standing when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Id.* at 183 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)).  In *Friends of the Earth*, the Supreme Court held that the plaintiff organization had established standing where several members averred in affidavits that they lived near defendant's facility, which deposited pollutants into a river, that they liked to and had engaged in various recreational activities in and near the river downstream of the facility, but that they no longer did so because of their concerns regarding pollutants generated by the facility.  *Id.* at 181-183.  Even so, "generalized harm to the forest or the environment will not alone support standing." *Summers v. Earth Island Institute*, 555 U.S. 488, 494, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009).

### b.    Application to Facts

Plaintiff has not alleged in his Complaint that he provided a 60-day notice to any of the entities listed in 33 U.S.C. section 1365.  In his Opposition, Plaintiff contests Defendants' notice argument.  "The OCJV received 335 days' notice to stop mismanaging the [Coliseum] and overflow lot.  They

22

United States District Court
Northern District of California

got the minimum 60 day notice nearly [six] times over." Opposition, 18. Even if this allegation had been made in the Complaint, it would not be sufficient to satisfy the notice requirement, as it does not address notice to the Administrator or the state of California. As such, the Court lacks jurisdiction to consider their claim under the CWA. Moreover, there are no allegations in the Complaint to demonstrate that Plaintiff has suffered any injury in fact as a result of the alleged violations of the CWA. Defendants' Motion to Dismiss is granted as to Plaintiffs' CWA claim. Plaintiff will be given leave to amend.

### 3.  Violation of the RCRA

#### a.  Legal Background

##### i.  Notice Requirement

A private citizen may commence a civil action on his own behalf under the RCRA against any violator of the Act. *Northern California River Watch*, 830 F.Supp.2d at 765 (citing 42 U.S.C. § 6972(a)). The RCRA requires a 60-day notice to the proper parties before commencing a suit for a violation of any "permit, standard, regulation, condition, requirement, prohibition or order" and a 90-day notice to a violator who has contributed to the "past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." *Id*. (citing 42 U.S.C. § 6972). Giving pre-suit notice is a "mandatory condition[] precedent to commencing suit under the RCRA citizen suit provision." *Gregory Village Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F.Supp.2d 888, 899 (N.D. Cal. 2011) (quoting *Hallstrom*, 493 U.S. 20, 31, 110 S.Ct. 304, 107 L.Ed.2d 237 (60-day notice)); *see also Covington v. Jefferson County*, 358 F.3d 626, 636 (9th Cir. 2004) (both 60-day and 90-day notice provisions are jurisdictional).

##### ii.  Article III Standing

The same Article III standing requirements discussed in connection with the CWA apply equally to cases brought under the RCRA. *See Covington v. Jefferson County*, 358 F.3d 626, 637-638 (9th Cir. 2004) *impliedly overruled on other grounds by Summers*, 555 U.S. 488, 129 S.Ct. 1142, 173 L.Ed.2d 1. In *Covington*, for example, the Ninth Circuit concluded that the plaintiffs had standing to

assert a RCRA cause of action.  *Id*. at 638-640.  There, the defendants maintained a landfill in a way that was not compliant with the RCRA.  *Id*. at 638.  Their non-compliance increased the risks that RCRA sought to minimize:  "Fires, explosions, vectors, scavengers, and groundwater contamination." *Id*.  The plaintiffs lived just across the road from the landfill.  *Id*.  The risks posed by the landfill threatened the plaintiffs' enjoyment of life and security of home.  *Id*.  Although the plaintiffs suffered burning noses and watering eyes, the Ninth Circuit noted that threats to the aesthetic and recreational enjoyment of their property were sufficient injuries to give rise to standing.  *Id*.  The Ninth Circuit also concluded that the injury was caused by the non-compliant operation of the landfill and would be redressed by a favorable decision.  *Id*. at 639-640.

### b.    Application to Facts

Plaintiff has not alleged in his Complaint that he provided either a 60-day or a 90-day notice to any of the entities listed in 42 U.S.C. section 6972.  In Opposition, Plaintiff makes the same argument with respect to notice under the RCRA as he made with respect to notice under the CWA.  His argument fails for the same reasons.  As such, the Court lacks jurisdiction to consider his claim under the RCRA.  Moreover, Plaintiff has made no attempt to allege, either in his Complaint or his Opposition, that he suffered any injury in fact as a result of the putative RCRA violation.  Defendants' Motion to Dismiss is granted as to Plaintiff's RCRA claim.  Plaintiff will be given leave to amend.

### 4.    Violation of the ADA

#### a.    Legal Background

##### i.    Article III Standing

The ADA was enacted to address Congress's finding that although "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society … many people with physical or mental disabilities have been precluded from doing so because of discrimination."  42 U.S.C. § 12101(a)(1).  The purpose of the ADA is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1); *see also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001) (the ADA provides a "broad mandate" "to eliminate discrimination against disabled individuals, and

United States District Court
Northern District of California

24

United States District Court

Northern District of California

1    to integrate them 'into the economic and social mainstream of American life.'")(quoting S.Rep. No.

2    101–116, p. 20 (1989); H.R.Rep. No. 101–485, pt. 2, p. 50 (1990), U.S. Code Cong. & Admin. News

3    1990, pt. 2, pp. 303, 332)).   Further, because the ADA is a civil rights statute that relies primarily on

4    private enforcement actions to obtain compliance, the Supreme Court has instructed that courts should

5    take a "broad view of constitutional standing."  *Chapman v. Pier 1 Imports (U.S.) Inc*., 631 F.3d 939,

6    946 (9th Cir. 2011) (citing *Doran v. 7-11, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008)(quoting

7    *Trafficante v. Metro Life Ins. Co*., 409 U.S. 205, 209 (1972)).   Nonetheless, a plaintiff asserting claims

8    under the ADA must establish the existence of a case or controversy under Article III of the

9    Constitution.  *Id*.  (citing U.S. Const. art. III, § 2; *Lujan*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119

10   L.Ed.2d 351).

11        In *Chapman v. Pier 1 Imports (U.S.) Inc*., the Ninth Circuit addressed the requirements for

12   Article III standing to seek injunctive relief under the ADA.  *Id*.  The starting point of the court's

13   analysis was the general principal that to establish Article III standing, a plaintiff must demonstrate

14   that he or she has suffered an injury-in-fact traceable to the defendant's actions and that the injury can

15   be redressed by a favorable decision.  *Id*. (citing *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075,

16   1081 (9th Cir. 2004)).   In addition, to obtain injunctive relief a plaintiff must "demonstrate a 'real or

17   immediate threat of repeated injury' in the future."  *Id*. (quoting *O'Shea v. Littleton*, 414 U.S. 488,

18   496 (1974)).   In *Chapman*, the court explained that under the ADA, actual injury does not require that

19   a barrier completely preclude a plaintiff from entering or using a facility in any way.  *Id*. at 947.

20   Rather, it is sufficient that barrier "interfere with the plaintiff's 'full and equal enjoyment' of the

21   facility."  *Id*. (citing 42 U.S.C. § 12182(a)).   "Because the ADAAG establishes the technical standards

22   required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's

23   disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under

24   the ADA."  *Id*.

25        To meet the "real and immediate threat of repeated injury" requirement for injunctive relief, a

26   plaintiff who has suffered injury-in-fact can demonstrate either that: 1) "he intends to return to a

27   noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural

28

25

barrier;" or 2) "discriminatory architectural barriers deter him from returning to a noncompliant accommodation." *Id.* at 950. As to the scope of an ADA plaintiff's standing, the *Chapman* court held that "[t]he ADA's remedial scheme is not limited to orders for the removal of encountered barriers, but instead dictates that 'injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities.'" *Id.* at 951 (quoting 42 U.S.C. § 1288(a)(2)). Thus, "the ADA specifically does not require that the disabled individual personally encounter each architectural barrier as a predicate to seeking its removal." *Id.* Further, even where the barriers that were encountered are later remedied, an ADA plaintiff does not lose his standing to challenge unencountered barriers. *Id.* at 952 (citing *Doran*, 524 F.3d at 1047).

In *Chapman*, the court held that the plaintiff failed to establish injury-in-fact where he alleged only that he was "physically disabled" and that he visited the defendant's store and "encountered architectural barriers that denied him full and equal access." *Id.* at 954. He did not allege what the barriers were or how his disability was affected by them. *Id.* Instead, he attached to his complaint an accessibility study, which merely identified alleged ADA and California Building Code violations "without connecting the alleged violations to Chapman's disability, or indicating whether or not he encountered any one of them in such a way as to impair his full and equal enjoyment" of the facility. *Id.* at 955. Citing *Ashcroft v. Iqbal*, the court held that these were "precisely the 'formulaic recitation' of the elements of a claim that the Supreme Court has deemed insufficient under Rule 8." *Id.* (citing 556 U.S. 662, 677). Because the plaintiff's allegations "[left] the . . . court to guess which, if any, of the alleged violations deprived him of the same full and equal access that a person who is not wheelchair bound would enjoy when shopping at [the defendant's store]," and also failed to "identify how any of the alleged violations threatens to deprive him of full and equal access due to his disability" in the future, Plaintiff did not sufficiently allege standing. *Id.*

### ii. General Principles

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases

United States District Court
Northern District of California

1    to), or operates a place of public accommodation."  42 U.S.C. § 12182.  To prevail on a

2    discrimination claim under Title III, a plaintiff must show that:  "(1) he is disabled within the meaning

3    of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public

4    accommodation; and (3) the plaintiff was denied a public accommodation by the defendant because of

5    his disability."  *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal. 2012) (quoting *Ariz. ex*

6    *rel. Goddard v. Harkins Amusement Enters.*, 603 F.3d 666, 670 (9th Cir. 2010)).

#### b.    Application to Facts

7

8        Plaintiff has not pled in his Complaint that he is disabled.  Nor has he pled any facts that

9    indicate he is disabled.  As a result, he has not satisfied the standing requirement under Article III, nor

10   has he stated a claim for relief.  Plaintiff's allegations in the Opposition are beside the point.  To

11   survive a motion to dismiss, the Complaint must contain sufficient allegations to state a claim for

12   relief.  Defendants' Motion to Dismiss is granted as to Plaintiff's claim under the ADA.  Plaintiff will

13   be given leave to amend.

### 5.    Violations of the National Highway Safety and Traffic Act

14

15       In his Complaint, Plaintiff asserts a breach of the National Highway Safety and Traffic Act

16   based on Defendants' failure "to provide adequate pedestrian walkways, railings, landings, ramps, and

17   other components which require separation from vehicular traffic, roadways, and thoroughfares

18   prescribed by the Act."  Complaint, 9:24-26.  Plaintiff provides no citation to authority.  Defendants

19   contend that Plaintiff is referring to the National Highway Traffic Safety Act, which they argue

20   provides no private right of enforcement.  Motion to Dismiss, 15 (citing 49 U.S.C. § 30162).  Plaintiff

21   cites no authority supporting this cause of action in their Opposition.[14]

22       Plaintiff has failed to identify any authority that would entitle him to relief on this cause of

23   action.  Plaintiff also has not alleged any injury resulting from the putative violation.  As a result, his

24   cause of action for violation of the National Highway Safety and Traffic Act is dismissed with leave

25   to amend to identify applicable statutory or regulatory authority.

26   //

27   ───────────────

[14] Plaintiffs do embellish allegations, without citation to statutory authority, that pedestrians were forced to share the road
with traffic.  Opposition, 19-20.

28

United States District Court
Northern District of California

### 6.    Violation of Caltrans Requirements

The Complaint does not cite any authority for the alleged Caltrans requirements.  Defendants argue that, therefore, "defendants have no understanding regarding what authority plaintiff relied upon to support [this] [c]ause of [a]ction."  Motion to Dismiss, 15.  In Opposition, Plaintiff cites to that sentence in Defendants brief in stating, "[T]he OCJV suggests that pedestrian paths should be shared with commercial traffic because trucks and people are equally as indestructible.  Even municipal codes allow for jay-walking citations because people aren't supposed to literally cross paths with vehicles outside of crosswalks."  Opposition, 20.  Plaintiff puts forward no other argument in support of this cause of action.  Plaintiff has failed to identify any authority that would entitle him to relief on this cause of action.  In addition, Plaintiff has not alleged any injury resulting from the putative violation.  As a result, his cause of action for violation of Caltrans requirements is dismissed.  Plaintiff will be given leave to amend to identify applicable statutory or regulatory authority.

### 7.    Breach of Contract

#### a.    Legal Background

The elements of a cause of action for breach of contract are:  (1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages.  *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F.Supp.2d 928, 954 (N.D. Cal. 2012) (citing *First Commercial Mortg. Co. v. Reece*, 89 Cal.App.4th 731, 745, 108 Cal.Rptr.2d 23 (2001)).  Under California law, "[i]f the action is based on an alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference."  *Otworth v. S. Pac. Transp. Co.*, 166 Cal.App.3d 452, 459, 212 Cal.Rptr. 743 (1985).  However, as a procedural matter, the sufficiency of the complaint is governed, not by state law, but by the Federal Rules of Civil Procedure and federal law interpreting those rules.  *See Cayo v. Valor Fighting & Mgmt. LLC*, 2008 WL 5170125, at *2 (N.D. Cal. Dec. 9, 2008) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-1103 (9th Cir. 2003)); *see also Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F.Supp.2d 1094, 1102 n.7 (E.D. Cal. 2010) (compiling federal cases refusing to apply the pleading standard set forth in *Otworth*).

28

1

        **b.**   **Application to Facts**

2

   Plaintiff pled in his Complaint that he entered a contract with Defendants when he purchased

3

two tickets for admission to the Concert and all the necessary venue facilities.  Complaint, 5:1-2,

4

10:15.  Plaintiff alleges that he timely arrived at the venue with his ticket, completing his

5

performance.  *Id*. at 5:2-4, 10:15-16.

6

   Plaintiff alleges that Defendants "constructively void[ed]" the tickets by failing to provide

7

sufficient staffing or amenities to accommodate the 69,000 ticket holders to the concert.  *Id*. at 5:2-4,

8

7:20-25, 10:16-19.   Plaintiff identifies ancillary benefits or facilities as security, safe premises,

9

sanitary facilities, light, ventilation, water, safety evacuation plans, ADA ramps, walks, elevators, on-

10

site emergency services, parking, and other benefits and services typically required when hosting

11

69,000 paying members of the public.  *Id*. at 8:27-9:4.  In a separate portion of his Complaint,

12

Plaintiff also alleges that he discovered, on arrival at the venue, that the necessary facilities "were

13

either severely deficient or nonexistent, and that only one of his tickets would be honored."  *Id*. at 5:3-

14

4.

15

   Plaintiff has not sufficiently pled Defendants legal duties under the contract to plead a breach

16

of any of those duties.  Plaintiff has not pled the terms of the underlying contract.  Moreover, Plaintiff

17

has not pled that Defendants were obligated by the contract to provide any of the listed amenities.  In

18

addition, Plaintiff has not identified which amenities were lacking in such a way as to cause him

19

damage.  Further, Plaintiff has not alleged that either of his tickets was presented for admission and

20

rejected.

21

   Plaintiff's breach of contract claim is dismissed because Plaintiff did not identify in his

22

Complaint the factual basis for any express or implied contractual duty that Defendants breached.[15]

23

Plaintiffs will be given leave to amend.

24

---

25

[15] The proceedings in Texas arising out of the 2011 Super Bowl do not warrant the conclusion that Plaintiffs have pled a cause of action for breach of contract.  *See Simms v. Jones*, 2011 WL 5978594, at *3 (N.D. Tex. Nov. 30, 2011).  In that case, the court allowed a breach of contract claim to go forward but found that the ticket contract did not create a claim for a breach of the implied covenant of good faith and fair dealing under Texas law.  *Id*. at *3-*4.  The plaintiffs provided their tickets, with the relevant terms.  *Id*. at *1.  The plaintiffs alleged that the National Football League ("NFL") attempted, but failed, to add a number of temporary seats to increase the venue's capacity.  *Id*.  Ticket holders brought claims that, as a result, they were denied seats, delayed in obtaining seating, or moved to different seats.  *Id*.  Another group of ticket holders brought a claim that they received obstructed view seating in breach of the contract.  *Id*.  Unlike

26

27

28

                  29

United States District Court
Northern District of California

United States District Court
Northern District of California

8.      **Negligence**

a.      **Legal Background**

i.      **General Considerations**

To state a claim for negligence, a plaintiff must allege:  (1) the defendant's legal duty of care to the plaintiff; (2) breach of that duty; (3) causation; and (4) resulting injury to the plaintiff.  *Merrill v. Navegar, Inc.*, 26 Cal.4th 465, 500, 110 Cal.Rptr.2d 370, 28 P.3d 116 (2001).

ii.      **The Economic Loss Rule**

"[T]he economic loss rule prevents the law of contract and the law of tort from dissolving one into the other."  *Robinson Helicopter*, 34 Cal.4th at 988, 22 Cal.Rptr.3d 352, 102 P.3d 268.  It "requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond the broken contractual promise."  *Id*.  Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury, for breach of the covenant of good faith and fair dealing in insurance contracts, for wrongful discharge in violation of public policy, and where the contract was fraudulently induced.  *Erlich*, 21 Cal.4th at 551-552, 87 Cal.Rptr.2d 886, 981 P.2d 978.  In each of those cases, the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct that is both intentional and intended to harm.  *Id*. at 552.  In addition, in the products liability context the rule may be overcome by allegations of personal injury or damages to property aside from the defective product.  *See Robinson Helicopter*, 34 Cal.4th at 988, 22 Cal.Rptr.3d 352, 102 P.3d 268.

b.      **Application to Facts**

Plaintiff's negligence claim is premised on the allegation that Defendants had a duty to provide adequate services to "Plaintiffs-Invitees."  Plaintiff alleged that Defendants breached that duty by failing to provide adequate services, leaving him constructively locked out of the venue.  The Complaint does not explain what could have given rise to a duty to provide adequate services except a contract between the parties.  Moreover, the only alleged harm is that Plaintiff's expectations under

---

that case, Plaintiffs have not pled the terms of the contract, have not pled that they were contractually entitled to the list of amenities they provide, and have not pled that Defendants breached the contract by failing to provide any specific amenity that prevented them from accessing the venue or their seats.

United States District Court
Northern District of California

1  the contract were disappointed.  That is, that he was unable to attend the concert having paid for his

2  tickets because Defendants failed to provide adequate services.  The underlying allegations, that

3  Plaintiff was "constructively locked out" of the Coliseum or that his tickets were "constructively

4  void[ed]" are almost identical.  There is no basis to conclude that the allegations supporting Plaintiff's

5  negligence theory are exempt from the economic loss rule.

6        In addition, Plaintiff does not provide any authority for the proposition that Defendants had a

7  legal duty to provide "adequate services" other than the contract.  The cause of action also fails,

8  therefore, for lack of a duty.  *See Erlich*, 21 Cal.4th at 552, 87 Cal.Rptr.2d 886, 981 P.2d 978 (the

9  negligent breach of a contract alone generally does not give rise to a tort duty).

10      In Opposition, Plaintiff argues that the overflow lot presented a number of dangers.[16]  To the

11 extent the Complaint can be read to support a negligence cause of action on this theory, it fails to state

12 a claim because it alleges no injury or damages caused by the dangers in the overflow parking lot.

13      Plaintiff's negligence cause of action is dismissed with leave to amend.

### 9.      Fraudulent Inducement

#### a.      Legal Background

##### i.      General Considerations

17      "Fraud in the inducement is a subset of the tort of fraud.  It 'occurs when ''the promisor knows

18 what he is signing but his consent is induced by fraud, mutual assent is present and a contract is

19 formed, which, by reason of the fraud is voidable.'''"  *Hinesley v. Oakshade Town Ctr.*, 135

20 Cal.App.4th 289, 294-295, 37 Cal.Rptr.3d 364 (2005) (quoting *Rosenthal v. Great Western Fin.*

21 *Securities Corp.*, 14 Cal.4th 394, 415, 58 Cal.Rptr.2d 875, 926 P.2d 1061 (1996)).  "The elements of

22 fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or

23 knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting

24 damage."  *Id*. at 294 (citing *Lazar*, 12 Cal.4th at 638, 49 Cal.Reptr.2d 377, 909 P.2d 981).  To plead a

---

[16] Plaintiff also argues in Opposition that Defendants negligently maintained the overflow lot in such a way as to violate the CWA and the RCRA.  He cites no authority for the proposition that a negligence claim can arise out of these statutes.  Relief for those alleged statutory violations is discussed above.

United States District Court
Northern District of California

1   claim for fraud in the inducement, Plaintiffs' allegations must be sufficiently detailed to meet the

2   heightened Rule 9(b) pleading standard for fraud.  *Parino*, 838 F.Supp.2d at 906.

### ii.      The Economic Loss Rule

4        The economic loss rule does not bar a properly pled fraudulent inducement claim:  "'[I]t has

5   long been the rule that where a contract is secured by fraudulent representations, the injured party may

6   elect to affirm the contract and sue for fraud."  *United Guar. Mortg. Indem. Co.*, 660 F.Supp.2d at

7   1188 (quoting *Lazar*, 12 Cal.4th at 645, 49 Cal.Reptr.2d 377, 909 P.2d 981).

### b.      Application to Facts

9        The Complaint alleges that Defendants oversold the concert knowing they did not have

10  sufficient amenities to accommodate 69,000 ticketed invitees.  The Complaint further alleges that

11  Defendants misrepresented that they could accommodate each ticketed guest, inducing reliance and

12  causing damages in an amount to be proven at trial.  In Opposition, Plaintiff contends Defendants

13  misrepresented that they could accommodate 69,000 people by selling 69,000 tickets.  Also in

14  Opposition, Plaintiff argues that Defendants knew they would be unable to accommodate 69,000

15  people because there have been failures to manage large crowds attending Raiders games in the past.

16       These allegations are insufficient to meet the heightened pleading standard set forth in Rule

17  9(b).  Plaintiff has not set forth the particular statements made, by whom they were made, when and

18  where they were made, and why each such statement was false.  Because Plaintiff has not satisfied the

19  heightened Rule 9(b) pleading standard, his fraudulent inducement cause of action is dismissed with

20  leave to amend.

### 10.    UCL

### a.      Legal Background

23       The UCL prohibits "unfair competition," which is defined as any "unlawful, unfair or

24  fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  A claim may be brought under

25  the UCL "by a person who has suffered injury in fact and has lost money or property as a result of

26  unfair competition."  Cal. Bus. & Prof. Code § 17204.  Therefore, to establish standing under the UCL

27  a plaintiff must "(1) establish a loss or deprivation of money sufficient to qualify as injury in fact, i.e.,

28

United States District Court
Northern District of California

1  *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair

2  business practice … that is the gravamen of the claim."  *Lawther v. OneWest Bank, FSB*, 2012 WL

3  298110, at *23 (N.D. Cal. Feb. 1, 2012) (quoting *Kwikset Corp.*, 51 Cal.4th 310, 337, 120

4  Cal.Rptr.741, 246 P.3d 877).

5  To establish a violation of Section 17200, a plaintiff may establish a violation under any one

6  of three prongs.  To state a cause of action based on an "unlawful" business act or practice under the

7  UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law.  *People v.*

8  *McKale*, 25 Cal.3d 626, 635, 159 Cal.Rptr. 811, 602 P.2d 731 (1979).  A "fraudulent" business act or

9  practice is one in which members of the public are likely to be deceived.  *Weinstat v. Dentsply Intern.,*

10  *Inc.*, 180 Cal.App. 4th 1213, 1223 n.8, 103 Cal.Rptr.3d 614 (2010) (citations omitted).  "'Fraudulent,'

11  as used in the statute, does not refer to the common law tort of fraud but only requires a showing that

12  members of the public 'are likely to be deceived.'"  *Olsen v. Breeze*, 48 Cal.App.4th 608, 618, 55

13  Cal.Rptr.2d 818 (1996).  UCL claims premised on fraudulent conduct trigger the heightened pleading

14  standard of Rule 9(b) of the Federal Rules of Civil Procedure.  *Kearns v. Ford Motor Co.*, 567 F.3d

15  1120, 1125 (9th Cir.2009).

16  Finally, while there is disagreement among California courts regarding the definition of

17  "unfair" business practices, three tests have been applied, as the court in *Phipps v. Wells Fargo*

18  explains:

19  In consumer cases, such as this, the California Supreme Court has not established a
definitive test to determine whether a business practice is unfair. *Drum v. San Fernando*
20  *Valley Bar Ass'n*, 182 Cal.App.4th 247, 256, 106 Cal.Rptr.3d 46 (2010). A split of
authority has developed among the California Courts of Appeal, which have applied three
21  tests for unfairness in consumer cases. *Drum*, 182 Cal.App.4th at 256, 106 Cal.Rptr.3d
22  46.

23  The test applied in one line of cases requires "that the public policy which is a predicate
to a consumer unfair competition action under the 'unfair' prong of the UCL must be
24  tethered to specific constitutional, statutory, or regulatory provisions." *Drum*, 182
Cal.App.4th at 256, 106 Cal.Rptr.3d 46 (citing *Bardin v. Daimlerchrysler Corp.*, 136
25  Cal.App.4th 1255, 1260–1261, 39 Cal.Rptr.3d 634 (2006); *Davis v. Ford Motor Credit*
*Co.*, 179 Cal.App.4th at 581, 595–596, 101 Cal.Rptr.3d 697 (2009); *Gregory v.*
26  *Albertson's Inc.*, 104 Cal.App.4th 845, 854, 128 Cal.Rptr.2d 389 (2002).

27

28

. . .

A second line of cases applies a test to determine whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum*, 182 Cal.App.4th at 257, 106 Cal.Rptr.3d 46 (citing *Bardin*, 136 Cal.App.4th at 1260, 39 Cal.Rptr.3d 634; *Davis*, 179 Cal.App.4th at 594–595, 101 Cal.Rptr.3d 697)).

. . .

The test applied in a third line of cases draws on the definition of "unfair" in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Drum*, 182 Cal.App.4th at 257, 106 Cal.Rptr.3d 46 (citing *Davis*, 179 Cal.App.4th 597–598, 101 Cal.Rptr.3d 697; *Camacho v. Automobile Club of Southern California*, 142 Cal.App.4th 1394, 1403, 48 Cal.Rptr.3d 770 (2006)).

2011 WL 302803, at *16 (E.D.Cal., Jan. 27, 2011).

### b.    Application to Facts

As discussed below, Plaintiff's UCL claim is dismissed with leave to amend.

### i.    Standing

Plaintiff alleges that Defendants engaged in fraudulent acts by selling more tickets to the concert than they were capable of accommodating and by advertising the concert in a way that misled the putative class of "Plaintiffs-Invitees" to believe that their tickets would be honored.  Plaintiff alleges that he suffered damage as a result.  Reading the Complaint in the light most favorable to Plaintiff, he has standing to assert a claim under the UCL on the theory that the concert was oversold because he allegedly suffered economic injury, the lost value of one of the two tickets he purchased, because Defendants sold tickets to more people than they were capable of accommodating.  However, Plaintiff does not have standing to assert a UCL claim on a theory of misleading advertising because Plaintiff has not alleged that he purchased a ticket, or otherwise suffered economic injury, in reliance on any of the unspecified misleading advertising.

//

34

United States District Court
Northern District of California

### ii.      Unlawful Prong

Plaintiff alleges that he suffered injury "[a]s a result of Defendants' unfair, unlawful and deceptive acts."  Plaintiff fails to allege that Defendants violated any law by overselling the concert or through their allegedly misleading advertising.  Moreover, Plaintiff has failed to plead that Defendants violated any other law.  To state a cause of action, Plaintiff must do so.  Plaintiff has not pled a cause of action under the unlawful prong.  Plaintiff will be given leave to amend.

### iii.      Fraudulent Prong

Plaintiff has not alleged that Defendants engaged in business practices that were likely to deceive the public with the specificity required by Rule 9(b).  As with their fraudulent inducement theory discussed above, Plaintiff has not satisfied the requirement of Rule 9(b) as to his theory under the fraudulent prong of the UCL.  That is, Plaintiff has not alleged the particular statements made, by whom they were made, when and where they were made, and why each such statement was likely to deceive a reasonable consumer.

Plaintiff has not pled sufficient factual allegations in his Complaint to support a cause of action to support a UCL cause of action under the fraudulent prong.  The Complaint is insufficient to put Defendants on notice of what specific conduct was likely to deceive a reasonable consumer.  Plaintiff will be given leave to amend to do so.

### iv.      Unfair Prong

Plaintiff has not sufficiently alleged a violation of the unfair prong under any of the three formulations of the test.  As to the first test, Plaintiff has not alleged that Defendants violated a public policy tethered to specific constitutional, statutory, or regulatory provisions in selling tickets to the Concert or advertising the Concert.  As to the second test, Plaintiff has not alleged that Defendants business practices related to the ticket sales were immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  To the extent that selling tickets beyond capacity can satisfy these requirements, Plaintiff has not alleged any specific amenities that the Coliseum lacked making it incapable of accommodating the number people who purchased tickets for the Concert.[17]  As to the

---

[17] For example, the Opposition emphasizes allegedly insufficient parking.  However, there are no allegations in the Complaint that Defendants indicated all, or any, ticket holders would be entitled to parking.

United States District Court
Northern District of California

1    third test, Plaintiff has not pled that he could not have avoided the alleged injury, being constructively

2    barred from access to the Coliseum after paying for tickets.  Because Plaintiff has not identified the

3    amenities that were lacking, Plaintiff has not made any factual allegations to raise an inference that

4    the injury was unavoidable.[18]

5            Plaintiff has not pled sufficient factual allegations in his Complaint to support a UCL cause of

6    action under the unfair prong.  Plaintiff has not pled in his Complaint factual allegations to put

7    Defendants on notice of precisely what conduct they believe was unfair.  Plaintiff will be given leave

8    to amend to do so.

9            **C.    Motion to Strike**

10                   **1.    Legal Standard**

11           Under Rule 12(f) of the Federal Rules of Civil Procedure, the court may strike from any

12   pleading "an insufficient defense or any redundant, immaterial, impertinent or scandalous matter."

13   "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise

14   from litigating spurious issues by dispensing with those issues prior to trial …"  *Whittlestone, Inc. v.*

15   *Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quotations omitted; citations omitted).  However,

16   motions to strike are generally disfavored.  5C Charles Alan Wright & Arthur R. Miller, Federal

17   Practice and Procedure § 1380 (3d ed. 2004).  Immaterial matter is defined as matter that "has no

18   essential or important relationship to the claim for relief or the defenses being pleaded."  *Fantasy, Inc.*

19   *v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quotations omitted; citations omitted).  Impertinent

20   matter is defined as "statements that do not pertain, and are not necessary, to the issues in question."

21   *Id.*

22           A Rule 12(f) motion is not a proper method to procure dismissal of all or part of a complaint

23   or counterclaim.  *Whittlestone*, 618 F.3d at 973-975; *see also Consumer Solutions REO, LLC v.*

24   *Hillery*, 658 F.Supp.2d 1002, 1020-1021 (N.D. Cal. 2009) (the proper medium for challenging the

25   sufficiency of factual allegations in a complaint is through Rule 12(b)(6), not Rule 12(f)).  Where a

26   _____

27   [18] For example, the Opposition focuses attention on a purported lack of parking.  The Complaint makes no allegation that
     the Coliseum promised to provide parking to all ticketed attendees regardless of their time of arrival.  Moreover, the
     Complaint makes no allegation that ticketed attendees had no alternative access to the Coliseum but to rely on the
28   Coliseum for parking.

United States District Court
Northern District of California

1  motion is in substance a Rule 12(b)(6) motion, but is incorrectly denominated as a Rule 12(f) motion,

2  a court may convert the improperly designated Rule 12(f) motion into a Rule 12(b)(6) motion.

3  *Hillery*, 658 F.Supp.2d at 1021 (treating a Rule 12(f) motion arguing that the Complaint contained

4  insufficient allegations to justify an award for punitive damages as a Rule 12(b)(6) motion).

### 2.        Punitive Damages

6          Defendants argue that the Complaint has not alleged sufficient facts to justify an award of

7  punitive damages.  As this is a challenge to the sufficiency of the Complaint, it is properly viewed as a

8  Rule 12(b)(6) motion.  *See Hillery*, 658 F.Supp.2d at 1021.  In any event, Defendants' argument that

9  there are insufficient allegations to justify an award of punitive damages is moot in light of the

10  Court's dismissal, with leave to amend, of each of Plaintiff's causes of action.  The Motion to Strike

11  Plaintiff's plea for punitive damages is denied without prejudice as moot.

### 3.        Class Allegations

#### a.        Legal Background

14          Class allegations are generally tested after one party has filed a motion for class certification

15  rather than at the pleadings stage.  *Thorpe v. Abbott Labs., Inc.*, 534 F.Supp.2d 1120, 1125 (N.D. Cal.

16  2008); *In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 505 F.Supp.2d 609, 615 (N.D. Cal.

17  2008).  This is because the shape and form of a class action evolves only through the process of

18  discovery.  *In re Wal-Mart*, 505 F.Supp.2d at 615.  Even so, district courts may strike class allegations

19  prior to discovery where it is apparent from the pleadings that a class cannot be maintained.  *See*

20  *Sutcliffe v. Wells Fargo Bank, N.A.*, 2012 WL 4835325, at *4 (N.D. Cal. Oct. 9, 2012) (citing

21  *Hovsepian v. Apple, Inc.*, 2009 WL 5069144, at *2 (N.D. Cal. Dec. 17, 2009)); *see also Kamm v. Cal.*

22  *City Dev. Co.*, 509 F.2d 205, 212-213 (9th Cir. 1975) (concluding that the district court did not abuse

23  its discretion in dismissing plaintiffs' class action claims and striking class allegations at the pleading

24  stage).

25          Federal courts apply state law in determining the disqualification of an attorney.  *In re County*

26  *of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).  California courts have held that a conflict of

27  interest prohibits class counsel, their relatives, and their business associates from acting as a class

28

representative. *Apple Computer*, 126 Cal.App.4th at 1264, 24 Cal.Rptr.3d 818. Class counsel must be monitored by an independent and informed client in order to protect the interests of the absent class members. *In re Cal. Micro Devices Sec. Lit.*, 168 F.R.D. 257, 262 (N.D. Cal. 1996). Even so, at least one California court has allowed precertification discovery to enable an attorney acting as putative class counsel and named plaintiff to identify individuals to serve as class representatives. *Best Buy*, 137 Cal.App.4th at 776-780.

### b.     Application to Facts

As alleged in the Complaint, Plaintiff attempts to act as both class counsel and class representative. This is improper. Thus, it is apparent from the pleadings that a class action cannot be maintained. The motion to strike the class allegations is granted. Nevertheless, Plaintiff asserts in his Opposition that there are a number of people willing to serve as class representative. If Plaintiff chooses to file an amended complaint raising class allegations, he must either identify a different class representative or obtain counsel to remedy the present conflict of interest.

### 4.     Websites

Defendants seek to strike both the web addresses contained in the Complaint and the information Plaintiff alleges in the Complaint was taken from those web addresses. Defendants' argument is predicated on two theories. First, Defendants contend that Plaintiff has not identified the content from the web addresses that is relevant to this litigation. This is incorrect. Plaintiff identified the information he derived from the listed web addresses within the Complaint itself, and Defendants are seeking to have those statements stricken. Second, Defendants assert that the contents of the website are not the proper subject of judicial notice. As discussed above, the Court agrees and does not take judicial notice of the contents of the websites. To the extent that the contents of the websites are reproduced or alleged within the Complaint, the Court must consider those allegations. Defendants make no argument that the contents of the websites, as alleged in the Complaint, are redundant, immaterial, impertinent, or scandalous. Indeed, the contents listed are provided either as an attempt to demonstrate Defendants' culpability, to demonstrate the numerosity of the class, to demonstrate the physical state of the facilities, or to support legal arguments. Therefore, the Motion

to Strike is denied as to the contents of the websites as listed in the Complaint and denied as moot as to the contents of the websites that are not listed in the Complaint.

Defendants have not put forward any argument that the web addresses themselves should be stricken, and it is not clear that the addresses themselves are necessarily immaterial or impertinent. Moreover, they are not redundant or scandalous. The Motion to Strike is also denied as to the web addresses.

### 5.   Attorney's Fees

Defendants make no argument in support of their request to strike Plaintiff's demand for attorney's fees until their reply brief. In that brief, Defendants argue that Plaintiffs have not established the basis on which they would be entitled to attorney's fees. Defendants never put forward any argument as to why Plaintiffs' demand for costs and fees should be stricken. The Court construes this as a challenge to the sufficiency of the factual allegations in the Complaint properly treated under Rule 12(b)(6). In any event, the Court has dismissed without prejudice any cause of action that could give rise to a recovery of attorney's fees. Therefore, the Motion to Strike the demand for attorney's fees is denied without prejudice as moot.

## VI.   CONCLUSION

For the foregoing reasons, the Motion is to Dismiss is granted with leave to amend. An amended complaint, if any, shall be filed within ten (10) days of the date of this Order. If an amended complaint is not filed within ten days of the date of this Order, the Clerk is directed to close the file. The Motion to Strike is granted in part and denied in part.

IT IS SO ORDERED.

Dated: March 5, 2013

JOSEPH C. SPERO
United States Magistrate Judge

United States District Court
Northern District of California