United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JULIE E. MISSUD,

          Plaintiff,

   v.

OAKLAND COLISEUM JOINT VENTURE, et al.

          Defendants.

Case No.: 12-02967 JCS

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; DISMISSING FIRST AMENDED COMPLAINT WITH PREJUDICE; DENYING DEFENDANTS' MOTION TO STRIKE AS MOOT**

## I.  INTRODUCTION

Plaintiffs Patrick A. Missud and Julie E. Missud ("the Missuds" or "Plaintiffs")[1] brought this putative class action against Defendants Oakland Coliseum Joint Venture ("OCJV"), City of Oakland, Alameda County, and SMG Corporation ("SMG") ("Defendants").[2]  Plaintiffs allege causes of action for (1) violations of the Clean Water Act ("CWA"); (2) violations of the Resource Conservation and Reclamation Act ("RCRA"); (3) violations of the Americans with Disabilities Act ("ADA"); (4) violations of the National Highway Safety and Traffic Act ("NHSTA"); (5) violations of the requirements established by Cal-trans ("Caltrans");[3] (6) negligence; (7) breach of contract; (8) fraudulent inducement; and (9) unfair business practices in violation of California Business and

---

[1] For ease of reference, the Court refers to Patrick A. Missud as "Patrick" and Julie E. Missud as "Julie" throughout this Order.

[2] In the original Complaint, Patrick, an attorney, brought this action in pro per and on behalf of a putative class.  After dismissal of the Complaint, Julie was added as a party to this action.  The First Amended Complaint also names "Eric S., Sameer Q., [and] Heather B." as potential plaintiffs, but none are a party to this action.  The FAC pleads that Patrick is no longer a party to this action, but rather acts only as class counsel.  Moreover, Plaintiffs' Response to Defendants' Motions to Dismiss and to Strike the First Amended Complaint put forward Joe Straton ("Straton") as a potential plaintiff, going so far as to list Straton as the only plaintiff in the caption of their motion.  Straton is not a party to this action.  The Court will treat only Julie as the plaintiff in this case.  Nevertheless, the Court refers to Patrick and Julie as "Plaintiffs" because a number of factual allegations in the First Amended Complaint pertain only to Patrick.

[3] The Complaint uses "Cal-trans" interchangeably with the "California Transportation Authority."  It appears the Complaint is referring to the California Department of Transportation, Caltrans.

United States District Court
Northern District of California

1   Professions Code section 17200 ("UCL").  Presently before the Court are (1) Defendants' Motion to

2   Dismiss the First Amended Complaint ("Motion to Dismiss"); and (2) Defendants' Motion to Strike

3   Portions of the First Amended Complaint ("Motion to Strike").  Defendants and the sole plaintiff in

4   this action, Julie Missud (see note 6 below), have consented to the jurisdiction of the undersigned

5   magistrate judge pursuant to 28 U.S.C. § 636(c).  For the reasons stated below, the Motion to Dismiss

6   is GRANTED, the FAC is dismissed with prejudice, and the Motion to Strike is DENIED as moot.

7   **II.      BACKGROUND**

8          **A.      Prior Order**

9          In the original Complaint, Patrick made the following allegations.  On June 7, 2011, the

10  Oakland Coliseum ("Coliseum") hosted a concert featuring the band U2 ("Concert").  Order Granting

11  Defendants' Motion to Dismiss Without Prejudice; Granting in Part and Denying in Part Defendants'

12  Motion to Strike ("Order"), 2.  Patrick alleged that OCJV cut services to maximize profits at the

13  Concert.  *Id*.  Defendants were aware for approximately one year that the Concert would be sold out

14  such that 69,000 people would be in attendance.  *Id*.  Defendants were required to provide access to

15  the venue, security, safe premises, sanitary facilities, light, ventilation, water, safety evacuation plans,

16  ramps, walks, elevators, on-site emergency services, and parking.  *Id*.

17         The Missuds purchased two tickets to the Concert.  *Id*.  Upon arrival, Patrick discovered that

18  the necessary facilities were either severely deficient or non-existent, and that only one of his tickets

19  would be honored by Defendants.  *Id*.  The Court dismissed each of Patrick's asserted causes of

20  action, with leave to amend, as follows:[4]

21         (1)      Violation of the CWA:  The Court dismissed Patrick's CWA claim for failure to

22  provide notice to all proper parties – the Environmental Protection Agency Administrator, the state in

23  which the violation was occurring, and the violator – in compliance with the statute.  *Id*. at 21-23.

24  The Court also dismissed Patrick's CWA claim for failure to allege Article III standing.  *Id*. at 22-23.

25  The Court did not address the substantive merits of Patrick's allegations.

26

27  _____

28  [4] In addition to the analysis of specific claims repeated below, the Court dismissed Patrick's claims against the City of Oakland and Alameda County, with leave to amend, for failure to comply with the California Tort Claims Act.  Order, 21.

(2)     <u>Violation of the RCRA</u>:  The Court dismissed Patrick's RCRA claim for failure to provide notice to all proper parties in compliance with the statute.  *Id*. at 23-24.[5]  The Court also dismissed Patrick's RCRA claim for failure to allege Article III standing.  *Id*.  The Court did not address the substantive merits of Patrick's allegations.

(3)     <u>Violation of the ADA</u>:  The Court dismissed Patrick's ADA claim because he did not plead any disability in his Complaint, and thus had not pled Article III standing or stated a claim for relief.  *Id*. at 27.  The Court engaged in no further substantive discussion of Patrick's allegations.

(4)     <u>Violation of the National Highway Safety and Traffic Act</u>:  The Court dismissed Patrick's claim, asserted under the National Highway Safety and Traffic Act, for failure to identify any authority that would entitle him to relief responsive to Defendants' assertion that there was no private right of enforcement under the National Highway Traffic Safety Act, to which they argued Plaintiff was referring, and failure to allege any injury.  *Id*.

(5)     <u>Violation of Caltrans Requirements</u>:  The Court dismissed Patrick's claim for Caltrans violations based on his failure to identify any authority that would entitle him to relief on this cause of action and his failure to allege any injury he suffered as a result of any such violation.  *Id*. at 28.

(6)     <u>Breach of Contract</u>:  The Court dismissed Patrick's claim for breach of contract because he did not sufficiently plead that Defendants breached their legal duties under the contract.  *Id*. at 29.  Specifically, the Court held that Patrick had not pled that Defendants were obligated by any contract to provide any of the amenities he asserted were lacking.  *Id*.

(7)     <u>Negligence</u>:  The Court dismissed Patrick's negligence claim premised on Defendants' failure to provide certain amenities as barred under the economic loss rule.  *Id*. at 30-31.  The Court dismissed Patrick's negligence claim predicated on the dangers presented by the overflow parking lot because he failed to allege any injury or damages caused by those dangers.  *Id*. at 31.

(8)     <u>Fraudulent Inducement</u>:  The Court dismissed Patrick's fraudulent inducement claim because he did not properly set forth the particular statements made, by whom they were made, when

United States District Court
Northern District of California

---

[5] Instead of specifically enumerating the proper entities, the Court provided a citation to the relevant statute, 42 U.S.C. § 6972.  Order, 24.  That statute authorizes suit "against any person" where certain predicates are met and advance notice has been provided to the Administrator, the state in which the alleged violation occurs, and the violator in accordance with the statute.  42 U.S.C. § 6972(b).

1   and where they were made, and why each such statement was false in accordance with Federal Rule

2   of Civil Procedure 9(b).  *Id.*

3          (9)    <u>UCL</u>:  The Court construed the Complaint as setting forth two UCL theories.  *Id.* at 34.

4   On one theory, Defendants engaged in fraudulent acts by advertising the concert in a way that misled

5   the putative class into believing that their tickets would be honored.  *Id.*  The Court held that Patrick

6   did not have standing to assert that UCL claim, because he did not allege that he relied on any

7   unspecified misleading advertising.  *Id.*  On the other theory, Defendants engaged in fraudulent acts

8   by overselling the concert knowing they were incapable of accommodating their patrons.  *Id.*

9   Although the Court held that Patrick had alleged a sufficient economic injury to support standing, it

10  further held that Patrick had not pled a cause of action under the unlawful, fraudulent, or unfair prongs

11  of the UCL analysis.  *Id.* at 34-36.  Specifically, the Court found Patrick's allegations of fraudulent

12  and unfair conduct to be factually deficient because he did not identify any particular statements, as

13  discussed above, and because he did not identify specific amenities that were promised, were lacking,

14  and made the Coliseum incapable of accommodating the number of people who purchased tickets for

15  the Concert.  *Id.* at 35-36.

16  **B.    The First Amended Complaint**

17  The First Amended Complaint ("FAC") identifies the Plaintiffs in this action as follows:

18  
19  The class action Plaintiffs [Class] are or will be represented by any combination of four
    similarly aggrieved Invitees who have tentatively agreed or already committed to becoming
20  lead Plaintiff(s) in this case.  They are Mrs. Missud, Eric S., Sameer Q., Heather B., and others
    who will likely be interested after this case has survived the present motions to dismiss and/or
21  additional Class members have been located.  Missud is now only the attorney of record
    herein.[6]
22  
23  FAC, 2:25-29.

24  The First Amended Complaint ("FAC") recites the same underlying factual allegations as

25  were set forth in the initial Complaint.  As described in this Court's previous Order:

26  ─────────────────────
    [6] The FAC refers to Patrick as "Missud," and Julie, to the extent she is specifically referenced, as "Mrs. Missud" or "his
27  wife."  FAC, 2:27, 19:21.  The Court interprets this provision as identifying Mrs. Julie Missud as a party, and Patrick
    Missud as counsel.  The remaining identified individuals are potential parties – especially in light of the fact that there are
28  no other allegations about them in the FAC.

United States District Court
Northern District of California

On the evening of June 7, 2011, the Oakland Coliseum ("Coliseum") hosted a concert featuring the band U2 ("Concert").  [FAC, 2:2-3].[7]  Plaintiffs make the following allegations.  OCJV cut services to maximize profits at the Concert.  *Id*. at [3:12-15].  Defendants were aware for approximately one year that the concert would be sold out such that 69,000 people would attend the concert.  *Id*. at [9:2-3].  Defendants were required to provide access to the venue, security, safe premises, sanitary facilities, light, ventilation, water, safety evacuation plans, ramps, walks, elevators, on-site emergency services, and parking.  *Id*. at [9:8-9:13].

Missud purchased two tickets to the Concert.  *Id*. at [5:14-15].[8]  Upon arrival, Missud discovered that the necessary facilities were either severely deficient or non-existent, and that only one of his tickets would be honored by Defendants.  *Id*. at [5:15-17].  Plaintiff alleges that (1) the class consists of in excess of 400 similarly situated members; (2) the issues pertaining to each of the causes of action pled in the Complaint are common to all class members; (3) Missud's claims are typical of the claims of each member of the class because each member had a ticket to see the concert, was denied access to the Coliseum, and properly planned to allow ample time to access the Coliseum; and (4) Missud will fairly and adequately represent and protect the interests of the class and will retain additional counsel that is competent and experienced in class action litigation.  *Id*. at [5:19-8:21].  Plaintiff alleges that they have citizen standing to enforce federal laws.  *Id*. at [5:11-12].  Plaintiff seeks injunctive relief, restitution, and punitive damages.  *Id*. at [24:7-26:15].

Order, 2.

Plaintiffs allege nine causes of action.  Additional factual allegations are added following each cause of action.  Otherwise, the factual allegations are unchanged.  The causes of action are pled as follows:

(1)     Violation of the CWA:  As in the original Complaint, Plaintiffs allege that "Defendants willfully violated the CWA with discharges of storm water, untreated sewage, and other pollutants into the Oakland Estuary, a protected state and federal wetland."  *See* FAC, 10:7-9.  Plaintiffs allege that the wetland is within the overflow parking lot.  *Id*. at 24:10-11.  To support this cause of action, Plaintiffs allege that Defendants operate an "overflow parking lot" during events at the Coliseum.  *Id*. at 6:3-6.  Plaintiffs allege that the overflow parking lot generates wastewater, at least in part because "greasy, leaking cars" are parked there.  *Id*. at 6:7-8, 6:12-14.  Plaintiffs allege that the use of the overflow parking lot has created "industrial-type point-source pollution" such that it may require

---

[7] The citations have been modified to refer to the FAC, as opposed to the Complaint.
[8] The allegations in this paragraph have not been updated.  It appears, in accordance with the initial Complaint and with Plaintiffs' Opposition to the present Motions that "Missud" refers to Patrick.

Defendants to perform an environmental impact report.  *Id*. at 6:18-20.  Plaintiffs further allege that the Oakland Estuary is being polluted by garbage discarded by Defendants' invitees because Defendants do not provide trash receptacles to manage the solid wastes discarded at the overflow parking lot.  *Id*. at 6:25-7:3.  Plaintiffs allege that Defendants should be subjected to Section 309 fines starting from the day they knew of the CWA violations, June 16, 2011.  *Id*. at 7:4-5.

Plaintiffs make the following new factual allegations in their FAC.  Plaintiffs gave Elliot Myles, attorney for OCJV, which includes all Defendants in this action, notice of this suit more than 364 days before bringing this suit.  *Id*. at 10:11-11:15.  Moreover, Plaintiffs provided notice to various state and federal Department of Justice Agents and to agents from the FBI.  *Id*. at 11:16-19.  "Any and all officials in a position to act were notified of the OCJV's ongoing violations."  *Id*. at 11:19-20.  As to standing, Plaintiffs allege that Patrick would have continued to eat lunch at the nature walk near the Oakland Estuary in the vicinity of the Coliseum but for Defendants' pollution.[9]  *Id*. at 11:22-28. However, Plaintiffs acknowledge that the area has been cleaned up such that Patrick will return to lunch there.  *Id*. at 12 n.4.

(2)    Violation of the RCRA:  As in the original Complaint, Plaintiffs allege that "Defendants willfully violated the RCRA with discharges of storm water, untreated sewage, and other pollutants into the Oakland Estuary, a protected state and federal wetland."  *Id*. at 12:6-9.  Plaintiffs allege that the groundwater under the overflow parking lot is being contaminated by "various alkali compounds, antifreeze, and motor transmission oils."  *Id*. at 12:9-11.  For the first time in the FAC, Plaintiffs allege that they notified "all required entities and all Defendants."  *Id*. at 12:11-12 (referencing discussion earlier in the FAC).

(3)    Violation of the ADA:  Plaintiffs allege that "Defendants willfully violated the ADA by failing to provide adequate walkways, railings, landings, ramps, and other components prescribed by the act."  *Id*. at 12:21-22.  Plaintiffs allege that the Coliseum is open to the public and offered for use by the City of Oakland and the County of Alameda.  *Id*. at 13:9-10.  Plaintiffs allege that Defendants violated the ADA because they do not provide lighting, bathrooms, walkways, ramps,

---

[9] Although the new factual allegations in the FAC refer to "Missud," they refer to "Missud" using male-gender pronouns indicating that they are referring to Patrick, not Julie.

transitions, or safety systems at or around the overflow parking lot. *Id*. at 7:11-16.  Plaintiffs also allege that there are no ADA compliant facilities, curbs, walks, handrails, or ramps between the overflow parking lot and the Coliseum. *Id*. at 24:16-17.  In addition, Plaintiffs allege that minimum walk widths, ascent angles, and railings are non-existent. *Id*. at 24:19-20.

Plaintiffs make the following new factual allegations in their FAC.  Patrick suffers from sclerosis and sciatica, limiting his walking mobility to two city blocks. *Id*. at 13:5-20.  The walk from the Coliseum to the overflow lot aggravated his sciatica. *Id*. at 14:11-12.  The walk requires traversing curbs exceeding twelve inches and there are no ramps available. *Id*. at 14:10-11.  In addition, he nearly tripped over a collapsed chain link fence and nearly fell in a rut full of muddy water. *Id*. at 14:12-13, 14:14-15.  Patrick also had to walk through "a maze of barbed wire, and assorted booby-traps" to return to the parking lot. *Id*. at 14:24-25.  Even so, Patrick "will absolutely return" to the Coliseum for an A's game this summer, so there is a real, immediate threat of repeated injury in the future. *Id*. at 14:18-21.  Plaintiffs also allege that, since suit was brought, the "lot's been graded and is rut-free; area routinely patrolled for debris and trash; grasses are growing where tire treads once scarred the land; collapsed fences have been removed and/or repaired; rusty barbed wire replaced with new; and various other improvements." *Id*. at 12 n.4.

(4)     <u>Violation of the NHSTA</u>:  As in their initial Complaint, Plaintiffs allege that "Defendants willfully violated the NHSTA by failing to provide adequate walkways, railings, landings, ramps, and other components which require separation from vehicular traffic, roadways, and thoroughfares as prescribed by the Act." *Id*. at 15:3-5.  Plaintiffs elaborate that pedestrians using the overflow parking lot are forced to "share the same vehicular path" with traffic. *Id*. at 24:25-25:1.  For the first time in the FAC, Plaintiffs allege that Defendants are not in compliance with several publications of the National Highway Traffic Safety Administration addressing roadway design. *Id*. at 15:7-26.  This is because the overflow lot is situated so as to require jay-walking across a freeway onramp to access a sidewalk. *Id*. at 15:26-16:7.  Plaintiffs state their belief that there are now major public works in the area that were apparently undertaken to improve pedestrian safety. *Id*. at 16 n.7.

United States District Court
Northern District of California

1    (5)    Violation of Caltrans Requirements:  Plaintiffs allege that "Defendants willfully

2    violated [Caltrans] safety codes by failing to provide adequate pedestrian walkways, railings,

3    landings, ramps, and other components which require separation from vehicular traffic, roadways, and

4    thoroughfares as prescribed by the state." *Id*. at 16:15-18.  This claim appears based on the same

5    underpinning as the NHTSA claim:  That pedestrians using the overflow parking lot are forced to

6    "share the same vehicular path" with traffic.  *Id*. at 24:25-25:6.  For the first time in the FAC,

7    Plaintiffs incorporate the Caltrans mission statement and state that Defendants are misusing Caltrans

8    maintained thoroughfares as pedestrian pathways.  *Id*. at 16:20-17:19.

9    (6)    Negligence:  Plaintiffs allege that Defendants had a duty to provide "adequate

10   services" to invitees.  *Id*. at 17:23.  Plaintiffs allege that Defendants did not provide adequate services.

11   *Id*. at 17:23-25.  Plaintiffs allege that Defendants failure to provide adequate services caused them to

12   be "effectively barred" from attending the concert.  *Id*. at 17:25-27.  Plaintiffs allege that they were

13   damaged in an amount to be proven at trial.  *Id*. at 17:27-18:2.  Plaintiffs allege that the overflow

14   parking lot lacks lighting and contains "mounds of refuse, deep water-filled potholes, cavernous ruts,

15   collapsed chain link fencing, slick mud, assorted other trip and slip hazards, and rusted barbed wire

16   surrounding [its] perimeter." *Id*. at 25:10-14.  Plaintiffs seek damages for all those physically injured

17   by the premises or barred from attending the Coliseum by "mismanagement of premises under

18   [Defendants'] control, including their 'overflow parking lot.'"  *Id*. at 25:18-24.

19   For the first time in the FAC, Plaintiffs allege that Defendants' mismanagement of the

20   overflow lot caused Patrick pain in his back and leg.  *Id*. at 18:8-9.  Moreover, Plaintiffs allege that

21   Defendants breached their covenant of good faith and fair dealing and fraudulently induced Plaintiffs

22   to attend the event.  *Id*. at 18:17-18.  Plaintiffs allege that they reasonably relied on Defendants'

23   representations that they could handle the volume of ticketholders invited to the event, and that

24   Defendants had a duty to provide adequate safe parking and traffic control.  *Id*. at 18:20-22.

25   Moreover, Plaintiffs allege that Defendants had a duty to provide access to the Coliseum because

26   Plaintiffs paid for seat licenses inside the Coliseum.  *Id*. at 18:27-28.  Plaintiffs allege that Defendants

27

28

United States District Court
Northern District of California

1  intentionally and maliciously caused them to waste time sitting in traffic outside the Coliseum in an

2  effort to boost profits by requiring Plaintiffs to wait to pay for parking. *Id*. at 18:28-19:8.

3  (7)  <u>Breach of Contract</u>:  As in the original Complaint, Plaintiffs indirectly allege that they

4  entered a contract with Defendants when they purchased licenses, tickets, from Defendants. *Id*. at

5  19:12. Plaintiffs allege that they performed under the contract by timely arriving at the Coliseum. *Id*.

6  at 19:12-13. Plaintiffs allege that Defendants breached the contracts by "constructively voiding" the

7  licenses. *Id*. at 10:13-14. Plaintiffs explain that Defendants did not provide sufficient staffing or

8  amenities to accommodate the 69,000 invitees they knew would be attending the concert. *Id*. at

9  10:15-16. Plaintiffs also allege some tickets were not honored, and that Defendants sold more tickets

10  than they could reasonably accommodate. *Id*. at 25:25-26, 26:3-5. Plaintiffs also allege that

11  Defendants made improper staffing assumptions. *Id*. at 8:6-8.

12  For the first time in the FAC, Plaintiffs clarify that they purchased two tickets with community

13  funds, and only one was timely honored. *Id*. at 19:20-22. Plaintiffs further clarify that their ticket

14  directs them to www.ticketmaster.com for the terms and conditions of their contract, but state that

15  they are unable to find the terms and conditions at that website. *Id*. at 20:1-3. Instead, Plaintiffs

16  allege that "[j]ust because the services which are required to support a Concert aren't specifically

17  enumerated on the Ticket or under 'terms and conditions' yet to be found, that doesn't mean they

18  aren't necessary when a multi-million-dollar consortium of private/public special interests want to

19  make lots of money hosting 69,000 people. A traffic control plan and adequate parking were a must

20  for this event." *Id*. at 20:25-29. Further, Plaintiffs invoke the doctrine of res ipsa loquitur. *Id*. at

21  21:2-4.

22  (8)  <u>Fraudulent Inducement</u>:  Plaintiffs allege that "Defendants knowingly oversold the

23  Concert." *Id*. at 21:8. Plaintiffs explain that Defendants knew they did not have sufficient amenities

24  to accommodate 69,000 invitees but misrepresented that they could do so, inducing Plaintiffs to buy

25  tickets that Defendants knew would not be honored. *Id*. at 10:9-11.

26  Plaintiffs make the new factual allegation that they "believed that since their Licenses were

27  offered for sale, they would be guaranteed admission to the Concert if they performed per contract

28

and arrived timely…" *Id*. at 21:20-22.  Plaintiffs made arrangements to attend the concert and arrived timely.  *Id*. at 21:22-29.  Plaintiffs further allege that Defendants promised "to put on an epic Concert," and Plaintiffs bought tickets.  *Id*. at 22:6-7.  The concert took place June 7, 2011.  *Id*. at 22:8-10.  Defendants mismanaged the concert for unknown reasons, but probably because they sought to maximize profits by minimizing expenses.  *Id*. at 22:10-12.

(9)     UCL:  Plaintiffs allege that "Defendants engaged in fraudulent acts by selling more Licenses for the Concert at the Venue than they were capable of accommodating with their facilities and amenities.  Further, the Defendants advertised the Concert in a way which misled the Plaintiffs-Invitees to believe that their Licenses, once bought, would be honored at the Venue for the Concert." *Id*. at 22:20-24.  Plaintiffs allege that Defendants' unfair, unlawful, and deceptive acts and practices have caused them damages in an amount to be shown at trial.  *Id*. at 22:24-23:2.

For the first time in the FAC, Plaintiffs allege that they learned of the Concert through some means of advertisement.  *Id*. at 23:5-6.  As to the unlawful prong, Plaintiffs allege that Defendants sold out the concert knowing they could not handle a sold out crowd.  *Id*. at 23:8-11.  As to the fraudulent prong, Plaintiffs imply that they have produced circumstantial evidence that Defendants were driven by greed to sell the maximum number of tickets possible knowing they could not handle such a crowd.  *Id*. at 23:12-16.  As to the unfair prong, Plaintiffs allege that Defendants violated public policy by stranding ticketholders in traffic for hours, preventing any disaster relief first responders from accessing the Coliseum and preventing any evacuation of the Coliseum that could have become necessary.  *Id*. at 23:16-22.  Plaintiffs also allege that public-policy prevents conditioning ticketholders' access to a venue on buying parking in the muddy overflow lot.  *Id*. at 23:22-25.

**C.     The Motions**

Defendants separately filed both a Motion to Dismiss the FAC and a Motion to Strike (1) the prayer for punitive damages; (2) the class allegations; (3) the allegations that Julie could properly serve as a class representative; (4) the prayer for attorneys' fees; and (5) web addresses improperly listed in the FAC.  *See* Dkt. Nos. 58-59.  Plaintiffs filed a consolidated Opposition to both Motions.

United States District Court
Northern District of California

1     Plaintiffs organize their Opposition with serial responses to specific points made in

2   Defendants' papers.  As to the Motion to Dismiss, Plaintiffs first argue that they notified the proper

3   authorities prior to filing suit pursuant to a master email list that Patrick maintains.  Opposition to

4   Motion to Dismiss and Motion to Strike ("Opposition"), 11.  Plaintiffs assert that the list includes

5   Defendants' counsel, the FBI, state and federal departments of justice, and county and state attorneys

6   representing state agencies.  *Id.*  Second, Plaintiffs assert that they have standing under the CWA and

7   RCRA because judicial oversight is necessary to prevent Defendants from again ravaging the Oakland

8   Estuary to boost their profits.  *Id.* at 12.

9     Third, Plaintiffs make a series of responses pertaining to their ADA claim.  Plaintiffs argue

10   that ADA discrimination can include failure to remove architectural barriers and state that Defendants

11   could have installed ramps in their twelve-inch concrete curbs, picked up collapsed fencing, filled

12   potholes and ruts, and collected other debris.  *Id.*  Plaintiffs also reiterate that the overflow lot is under

13   Defendants' control.  *Id.* at 13.  Next, Plaintiffs clarify that Patrick arrived at the Coliseum using

14   BART, which was crowded.  *Id.*  The walk from BART to the Coliseum's entry gates was time-

15   consuming, as "throngs of concertgoers were shuffling feet in unison to make forward progress."  *Id.*

16   Patrick was in severe back pain by the time he reached the gates.  *Id.*  On the other hand, Julie took a

17   car to the event, parked in the overflow lot, and missed the vast majority of the concert as a result of

18   the traffic snafu Plaintiffs argue was caused by Defendants.  *Id.*  Plaintiffs argue that any ADA

19   accessible parking is irrelevant because they could not get to it through traffic.  *Id.*

20     Fourth, Plaintiffs do not dispute Defendants' assertion that there is no private right of action

21   supporting their NHSTA claim, but state that Defendants' failure to comply with the safety advisories

22   demonstrates Defendants' "cavalier attitude when it comes to commingling children and the elderly

23   among 18-wheelers."  *Id.* at 14.

24     Fifth, Plaintiffs contend that their inability to find the terms of their contracts is proof that the

25   terms do not exist.  *Id.*  However, Plaintiffs request Defendants provide the terms of the contract in

26   Defendants' Reply brief.  *Id.*  In any event, Plaintiffs assert that Defendants prevented them from

27

28

1    accessing the venue at all by causing the traffic congestion because, once stuck in traffic, Plaintiffs

2    could not be expected to leave their cars and walk into the venue.  *Id*. at 14-15.

3           Sixth, Plaintiffs argue that the economic loss rule does not apply because the terms of their

4    contract of adhesion were not bargained and because Defendants withheld the material information

5    that they were cutting corners to maximize profits in such a way that jeopardized Plaintiffs' ability to

6    access the Coliseum.  *Id*. at 15.

7           Seventh, Plaintiffs assert that they pled fraud with particularity.  *Id*.  They state that OCJV

8    knowingly oversold the concert, knowing it could not handle the crowds based on its past experiences.

9    *Id*.  Plaintiffs contend that they were impliedly misinformed, by sale of the ticket, that they could get

10   into the venue within three hours of arrival.  *Id*.  Plaintiffs appear to argue that the misrepresentation

11   occurred at the Coliseum on the day of the Concert as a result of Defendants reckless greed.  *Id*.

12          Eighth, Plaintiffs assert that they have established a UCL claim based on Defendants'

13   misrepresentation that they could handle 69,000 guests.  *Id*. at 15-16.  Plaintiffs state that their tickets

14   were not honored at entry gates because those gates were inaccessible because of the traffic

15   congestion that resulted from the concert being oversold.  *Id*. at 16.  Plaintiffs assert that the traffic

16   congestion and the overflow lot created dangerous conditions.  *Id*.

17   **III.     JUDICIAL NOTICE**

18          The standard for judicial notice is set forth in Rule 201 of the Federal Rules of Evidence,

19   which allows a court to take judicial notice of an adjudicative fact not subject to "reasonable dispute,"

20   either because it is "generally known within the territorial jurisdiction of the trial court" or it is

21   "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably

22   be questioned."  Fed. R. Evid. 201.  As a general rule, the court "may not consider any material

23   beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *U.S. v. Corinthian Colleges*, 655 F.3d

24   984, 998-99 (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).

25   However, the court may consider unattached evidence on which the complaint "necessarily relies" if:

26   "(1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no

27   party questions the authenticity of the document."  *Id*. at 999 (citing *Marder v. Lopez*, 450 F.3d 445,

28

1    448 (9th Cir. 2006)).  In addition, the court may take judicial notice of "matters of public record," but

2    not facts that may be "subject to reasonable dispute."  *Id.* (citing *Lee*, 250 F.3d at 689).

3            Patrick referenced eleven web pages in his initial Complaint.  Each of those webpages remains

4    in his FAC, unchanged.  The Court adopts its judicial notice ruling as to the contents of those eleven

5    web pages.  *See* Order, 16-18.

6            The FAC adds five new internet references.  Two are links to support the assertions that third-

7    party organizations have referenced various government reports.  FAC, 15:22-24.  Incorporation by

8    reference of these websites is improper because the FAC does not necessarily rely on their contents,

9    and the articles are not central to Plaintiffs' claims.  Moreover, they are not subject to judicial notice

10   as public records.  Nevertheless, the Court will consider Plaintiffs' allegation that the government

11   reports are referenced in third party publications at two internet addresses.

12           The other three addresses are to government websites, provided as citation to support

13   allegations in the FAC.  *Id.* at 16:21, 17:2, 17:14.  Incorporation by reference of these websites is

14   improper for the same reasons.  However, the Court takes judicial notice of the information contained

15   at each of the government websites included in the FAC as public records.  *See Paralyzed Veterans of*

16   *America v. McPherson*, 2008 WL 418391, at *5-*6 (N.D. Cal. Sept. 9, 2008) (taking judicial notice of

17   information appearing on official government websites).  The information on these websites, much of

18   which is repeated in the FAC in any event, is not subject to reasonable dispute.

19           As in its previous Order, even where the Court does not take judicial notice of the content of

20   certain websites it still considers the allegations pled in the FAC relating to the contents of those

21   websites in resolving the present motions.

22   **IV.    ANALYSIS**

23           **A.    Legal Standard**

24                   **1.    Rule 12(b)(6)**

25           A complaint may be dismissed for failure to state a claim for which relief can be granted

26   under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  "The purpose

27   of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star*

28

United States District Court
Northern District of California

13

1    *Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the

2    pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that "[a]

3    pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the

4    claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

5           In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes

6    "all allegations of material fact as true and construe[s] them in the light most favorable to the non-

7    moving party."  *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal may

8    be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid

9    theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint must

10   "contain either direct or inferential allegations respecting all the material elements necessary to

11   sustain recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562

12   (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A

13   pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

14   action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at

15   555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

16   enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

17          The factual allegations must be definite enough to "raise a right to relief above the speculative

18   level."  *Twombly*, 550 U.S. at 555.  However, a complaint does not need detailed factual allegations to

19   survive dismissal.  *Id.*  Rather, a complaint need only include enough facts to state a claim that is

20   "plausible on its face."  *Id*. at 570.  That is, the pleadings must contain factual allegations "plausibly

21   suggesting (not merely consistent with)" a right to relief.  *Id*. at 545 (noting that this requirement is

22   consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader

23   is entitled to relief").  Generally, a plaintiff's statement in an opposition brief cannot amend the

24   complaint under Rule 15.  *See Fabbrini*, 544 F.Supp.2d at 1050 (citing *Car Carriers, Inc. v. Ford

25   Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

26          The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if

27   no request to amend the pleading was made, unless it determines that the pleading could not possibly

28

United States District Court
Northern District of California

1  be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)

2  (citations and internal quotation marks omitted).

### 2.    Rule 9(b)

4       Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake,

5  a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P.

6  9(b).  A court may dismiss a claim grounded in fraud when its allegations fail to satisfy Rule 9(b)'s

7  heightened pleading requirements.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir.

8  2003).  The plaintiff must include "the who, what, when, where, and how" of the fraud.  *Id.* at 1106

9  (citations omitted).  "The plaintiff must set forth what is false or misleading about a statement, and

10  why it is false."  *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994).  A claim for fraud must

11  be "specific enough to give defendants notice of the particular conduct which is alleged to constitute

12  the fraud charged so that they can defend against the charge and not just deny that they have done

13  anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

### B.    Motion to Dismiss

### 1.    The California Tort Claims Act

### a.    Legal Background

17       No civil suit may be brought against a public entity "until a written claim therefor has been

18  presented to the public entity and has been acted upon by the board, or has been deemed to have been

19  rejected by the board…"  Cal. Gov't Code § 945.4; *see also State of California v. Superior Court of*

20  *Kings County*, 32 Cal.4th 1234, 1243, 13 Cal.Rptr.3d 534, 90 P.3d 116 (2004) ("*Bodde*").  The

21  "board" is the governing body of a local public entity, including a county.  Cal. Gov't Code §§ 900.2,

22  900.4.  The board must grant or deny a claim within forty-five days after it is presented or the claim is

23  deemed rejected. Cal. Gov't Code § 912.4.  Lawsuits that seek monetary relief based on claims

24  sounding in tort, as well as claims sounding in contract, are lawsuits for "money or damages."  *See*

25  *City of Stockton v. Superior Court*, 42 Cal.4th 730, 738, 68 Cal.Rptr.3d 295, 171 P.3d 20 (2007).

26  Failure to allege facts demonstrating or excusing compliance with the claim presentation requirement

27  is grounds for dismissal of a plaintiff's claims.  *Bodde*, 32 Cal.4th at 1245, 13 Cal.Rptr.3d 534, 90

28

P.3d 116.  This requirement applies in federal court.  *Butler v. Los Angeles Cnty.*, 617 F.Supp.2d 994, 1001 (C.D. Cal. 2008).  The written claim "shall show all of" the enumerated requirements listed in California Government Code section 910.  Cal. Gov't Code § 910.  Claims statutes must be satisfied even in the face of the public entity's actual knowledge of the circumstances surrounding the claim.  *City of Stockton*, 42 Cal.4th at 738, 68 Cal.Rptr.3d 295, 171 P.3d 20.

### b.      Application to Facts

Plaintiffs allege that they provided notice of their claims to the attorney for the OCJV, including the County of Alameda and the City of Oakland.  FAC, 9:19-28.  Plaintiffs have not alleged compliance with the California Tort Claims Act.  *See* Cal. Gov't Code § 910 *et seq.*  Plaintiffs' claims against the City of Oakland and Alameda County for money or damages are again dismissed on this basis, this time with prejudice.

### 2.      Violation of the CWA

### a.      Notice Requirement

A private citizen may commence a civil action on his own behalf under the CWA against any violator of the Act.  *Northern California River Watch v. Honeywell Aerospace*, 830 F.Supp.2d 760, 765 (N.D. Cal. 2011) (citing 33 U.S.C. § 1365(a)).  The CWA requires a prospective plaintiff to give a 60-day notice to the proper parties – the Environmental Protection Agency Administrator, the state in which the violation is occurring, and the violator – before commencing suit against an alleged violator.  *Id.* (citing 33 U.S.C. § 1365(b)).  Compliance with the notice requirement is a jurisdictional necessity.  *Center for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 800 (9th Cir. 2008) (citing *Waterkeepers N. Cal. v. AG Indus. Mfg., Inc.*, 375 F.3d 913, 916 (9th Cir. 2004)).

### b.      Application to Facts

Even assuming Plaintiffs have adequately pled notice to Defendants, the purported violators, and California, the state in which the violation occurred, Plaintiffs have not pled that they provided a 60-day notice to the Administrator.  Rather, Plaintiffs allege:

> [V]arious state and federal Department of Justice agents received notice of the OCJV's violations.  The DOJ's Wong and Reding who are attorneys of record for C:11-2567 and 12-161, as well as agents from the FBI, who will for the moment remain un-named, knew of and

16

received notice of the OCJV's violations in real-time.  Any and all officials in a position to act were notified of the OCJV's ongoing violations.  The principle actors and violators, the OCJV, did nothing but brazenly continue polluting the Estuary.

FAC, 11:16-21.  In addition, pursuant to their RCRA cause of action, Plaintiffs allege:  "As discussed supra, Missud notified all required entities and all Defendants who've already lied about not receiving proper notice."  *Id*. at 12:11-12.  In Opposition, Plaintiffs clarify that Patrick sent notice, of some sort, to Defendants' counsel, county and state attorneys representing governmental agencies, the FBI, and state and federal Departments of Justice, through his own master email list.  Opposition, 11-12.

In spite of the Court's Order, which stated that the Environmental Protection Agency Administrator was a party that must be provided notice as a jurisdictional requirement and provided a citation to the relevant statute, and two extensions of time to amend their complaint, Plaintiffs have not made the specific factual allegation that they provided notice to the Administrator.  Moreover, Plaintiffs do not acknowledge or address their failure to do so in their Opposition despite Defendants' clear argument that their claim should be dismissed without leave to amend for failure to provide notice to the Administrator.  *See* Motion to Dismiss, 10.  Accordingly, Plaintiffs' CWA claim is dismissed without leave to amend as further amendment would be futile.

### 3.    Violation of the RCRA

#### a.    Notice Requirement

A private citizen may commence a civil action on his own behalf under the RCRA against any violator of the Act.  *Northern California River Watch*, 830 F.Supp.2d at 765 (citing 42 U.S.C. § 6972(a)).  The RCRA requires a 60-day notice to the proper parties before commencing a suit for a violation of any "permit, standard, regulation, condition, requirement, prohibition or order" and a 90-day notice to a violator who has contributed to the "past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."  *Id*. (citing 42 U.S.C. § 6972).  The required notice must be provided to the Administrator of the Environmental Protection Agency, the state in which the alleged violation occurs, and the alleged violator.  42 U.S.C. § 6972(b).  Notice to the alleged violator may be less than 60 or 90 days prior to initiating suit in certain enumerated

17

United States District Court
Northern District of California

1   circumstances.  *Id.*  Giving pre-suit notice is a "mandatory condition[] precedent to commencing suit

2   under the RCRA citizen suit provision."  *Gregory Village Partners, L.P. v. Chevron U.S.A., Inc.*, 805

3   F.Supp.2d 888, 899 (N.D. Cal. 2011) (quoting *Hallstrom*, 493 U.S. 20, 31, 110 S.Ct. 304, 107

4   L.Ed.2d 237 (60-day notice)); *see also Covington v. Jefferson County*, 358 F.3d 626, 636 (9th Cir.

5   2004) (both 60-day and 90-day notice provisions are jurisdictional).

### b.   Application to Facts

7          Even assuming Plaintiffs have adequately pled notice to Defendants, the purported violators,

8   and California, the state in which the violation occurred, Plaintiffs have not pled that they provided

9   any notice to the Administrator.  Rather, as noted above, Plaintiffs allege:

> [V]arious state and federal Department of Justice agents received notice of the OCJV's
> violations.  The DOJ's Wong and Reding who are attorneys of record for C:11-2567 and 12-
> 161, as well as agents from the FBI, who will for the moment remain un-named, knew of and
> received notice of the OCJV's violations in real-time.  Any and all officials in a position to act
> were notified of the OCJV's ongoing violations.  The principle actors and violators, the OCJV,
> did nothing but brazenly continue polluting the Estuary.

15  FAC, 11:16-21.  In addition, pursuant to their RCRA cause of action, Plaintiffs allege:  "As discussed

16  supra, Missud notified all required entities and all Defendants who've already lied about not receiving

17  proper notice."  *Id.* at 12:11-12.  In Opposition, Plaintiffs clarify that Patrick sent notice, of some sort,

18  to Defendants' counsel, county and state attorneys representing governmental agencies, the FBI, and

19  state and federal Departments of Justice, through his own master email list.  Opposition, 11-12.

20         Once again, the Court provided statutory authority demonstrating that, as a jurisdictional

21  necessity, notice had to be afforded to the Administrator prior to bringing suit.  Despite two

22  extensions of time to amend their complaint, Plaintiffs have not pled that they provided any notice to

23  the Administrator.  Rather, as with their CWA claim, Plaintiffs do not acknowledge or address their

24  failure to do so in their Opposition despite Defendants' clear argument that their claim should be

25  dismissed without leave to amend for failure to provide notice to the Administrator.  *See* Motion to

26  Dismiss, 10.  Accordingly, Plaintiffs' RCRA claim is dismissed without leave to amend as further

27  amendment would be futile.

28

United States District Court
Northern District of California

1    **4.**    **Violation of the ADA**

2         **a.**    **Legal Background**

3              **i.**    **Article III Standing**

4         The ADA was enacted to address Congress' finding that although "physical or mental

5    disabilities in no way diminish a person's right to fully participate in all aspects of society … many

6    people with physical or mental disabilities have been precluded from doing so because of

7    discrimination." 42 U.S.C. § 12101(a)(1).  The purpose of the ADA is to "provide a clear and

8    comprehensive national mandate for the elimination of discrimination against individuals with

9    disabilities." 42 U.S.C. § 12101(b)(1); *see also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001)

10   (the ADA provides a "broad mandate" "to eliminate discrimination against disabled individuals, and

11   to integrate them 'into the economic and social mainstream of American life.'")(quoting S.Rep. No.

12   101–116, p. 20 (1989); H.R.Rep. No. 101–485, pt. 2, p. 50 (1990), U.S. Code Cong. & Admin. News

13   1990, pt. 2, pp. 303, 332)).  Further, because the ADA is a civil rights statute that relies primarily on

14   private enforcement actions to obtain compliance, the Supreme Court has instructed that courts should

15   take a "broad view of constitutional standing."  *Chapman v. Pier 1 Imports (U.S.) Inc*., 631 F.3d 939,

16   946 (9th Cir. 2011) (citing *Doran v. 7-11, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008)(quoting

17   *Trafficante v. Metro Life Ins. Co*., 409 U.S. 205, 209 (1972)).  Nonetheless, a plaintiff asserting claims

18   under the ADA must establish the existence of a case or controversy under Article III of the

19   Constitution. *Id*. (citing U.S. Const. art. III, § 2; *Lujan*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119

20   L.Ed.2d 351).

21        In *Chapman v. Pier 1 Imports (U.S.) Inc*., the Ninth Circuit addressed the requirements for

22   Article III standing to seek injunctive relief under the ADA.  *Id*.  The starting point of the court's

23   analysis was the general principal that to establish Article III standing, a plaintiff must demonstrate

24   that he or she has suffered an injury-in-fact traceable to the defendant's actions and that the injury can

25   be redressed by a favorable decision.  *Id*. (citing *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075,

26   1081 (9th Cir. 2004))  In addition, to obtain injunctive relief a plaintiff must "demonstrate a 'real or

27   immediate threat of repeated injury' in the future."  *Id*. (quoting *O'Shea v. Littleton*, 414 U.S. 488,

28

United States District Court
Northern District of California

1   496 (1974)).[10]  In *Chapman*, the court explained that under the ADA, actual injury does not require

2   that a barrier completely preclude a plaintiff from entering or using a facility in any way.  *Id*. at 947.

3   Rather, it is sufficient that barrier "interfere with the plaintiff's 'full and equal enjoyment' of the

4   facility."  *Id*. (citing 42 U.S.C. § 12182(a)).  "Because the ADAAG establishes the technical standards

5   required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's

6   disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under

7   the ADA."  *Id*.

8        To meet the "real and immediate threat of repeated injury" requirement for injunctive relief, a

9   plaintiff who has suffered injury-in-fact can demonstrate either that: 1) "he intends to return to a

10   noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural

11   barrier;" or 2) "discriminatory architectural barriers deter him from returning to a noncompliant

12   accommodation."  *Id*. at 950.  As to the scope of an ADA plaintiff's standing, the *Chapman* court held

13   that "[t]he ADA's remedial scheme is not limited to orders for the removal of encountered barriers,

14   but instead dictates that 'injunctive relief shall include an order to alter facilities to make such

15   facilities readily accessible to and usable by individuals with disabilities.'"  *Id*. at 951 (quoting 42

16   U.S.C. § 1288(a)(2)).  Thus, "the ADA specifically does not require that the disabled individual

17   personally encounter each architectural barrier as a predicate to seeking its removal."  *Id*.  Further,

18   even where the barriers that were encountered are later remedied, an ADA plaintiff does not lose his

19   standing to challenge unencountered barriers.  *Id*. at 952 (citing *Doran*, 524 F.3d at 1047).

20        In *Chapman*, the court held that the plaintiff failed to establish injury-in-fact where he alleged

21   only that he was "physically disabled" and that he visited the defendant's store and "encountered

22   architectural barriers that denied him full and equal access."  *Id*. at 954.  He did not allege what the

23   barriers were or how his disability was affected by them.  *Id*.  Instead, he attached to his complaint an

24   accessibility study, which merely identified alleged ADA and California Building Code violations

25   "without connecting the alleged violations to Chapman's disability, or indicating whether or not he

26

27   ─────────────────────

[10] 42 U.S.C. § 12188(a)(1) affords private plaintiffs the remedies provided under the Civil Rights Act of 1964, 42 U.S.C. § 2000a-3(a).  Damages may be awarded to aggrieved individuals when requested in suits brought by the Attorney General.  *See* U.S.C. § 12188(b)(2).

28

20

encountered any one of them in such a way as to impair his full and equal enjoyment" of the facility. *Id.* at 955.  Citing *Ashcroft v. Iqbal*, the court held that these were "precisely the 'formulaic recitation' of the elements of a claim that the Supreme Court has deemed insufficient under Rule 8." *Id.* (citing 556 U.S. 662, 677).  Because the plaintiff's allegations "[left] the . . . court to guess which, if any, of the alleged violations deprived him of the same full and equal access that a person who is not wheelchair bound would enjoy when shopping at [the defendant's store]," and also failed to "identify how any of the alleged violations threatens to deprive him of full and equal access due to his disability" in the future, Plaintiff did not sufficiently allege standing.  *Id.*

### ii.       General Principles

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182.  To prevail on a discrimination claim under Title III, a plaintiff must show that:  "(1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied a public accommodation by the defendant because of his disability."  *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal. 2012) (quoting *Ariz. ex rel. Goddard v. Harkins Amusement Enters.*, 603 F.3d 666, 670 (9th Cir. 2010)).

In addition, Title II of the ADA covers discrimination in the provision of public services.  *See* 42 U.S.C. §§ 12131-12165.  Title II is divided into two parts:  Part A covers public services generally, 42 U.S.C. §§ 12131-12134; Part B applies specifically and only to public transportation provided by public entities, 42 U.S.C. §§ 12141-12165.  To state a claim under Title II of the ADA, a plaintiff must allege that:  (1) she is an individual with a disability under the Act; (2) she is "otherwise qualified" to participate in or receive the benefit of the entity's services programs, or activities, i.e., she meets the essential eligibility requirements of the entity, with or without reasonable accommodation; (3) she was either excluded from participation in or denied the benefits of the entity's services, programs, or activities, or was otherwise discriminated against by the public entity

United States District Court
Northern District of California

21

solely by reason of her disability; and (4) the entity is a public entity. *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999). "The ADA shall be construed broadly in order to effectively implement the ADA's fundamental purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *D.K. ex rel. G.M. v. Solano County Office of Educ.*, 667 F.Supp.2d 1184, 1190 (E.D. Cal. 2009) (citing *Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002)).

### b.    Application to Facts

Patrick is removed as a party from the FAC, he is now "only the attorney of record herein." Nevertheless, the amended allegations of disability pertain only to Patrick. There are no allegations in the FAC that Julie, the only Plaintiff, is disabled. Therefore, there are no allegations of any deprivations under the statute as to the sole plaintiff. The ADA claim is therefore dismissed without leave to amend.

In addition, even if Patrick were still a party, he has not adequately pled his standing to pursue an ADA claim for injunctive relief pursuant to *Chapman*. Plaintiffs allege that Patrick suffers from sciatica and severe sclerosis, and is accordingly limited to a walking range of two city blocks. Plaintiffs allege the following barriers to access: (1) the distance between the overflow parking lot and the Coliseum; (2) some unspecified number of curbs between the overflow lot and the Coliseum that lack ramps; and (3) various hazards in and around the overflow lot. Plaintiffs further plead that Patrick will return to the Coliseum to attend an A's game. Plaintiffs do not plead that Patrick will be required to use the overflow lot to do so. Thus, Plaintiffs have not pled that Patrick is likely to reencounter any of the alleged discriminatory architectural barriers at the Coliseum. Moreover, Plaintiffs have not pled that the discriminatory architectural barriers deter Patrick from returning to the Coliseum. *See Chapman*, 631 F.3d at 950.

### 5.    The National Highway Safety and Traffic Act and Caltrans Requirements

### a.    Article III Standing

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

United States District Court
Northern District of California

1   hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is

2   likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

3   *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-181, 120 S.Ct. 693, 145

4   L.Ed.2d 610 (2000).

### b.   Application to Facts

6          In his FAC, Plaintiffs assert a violation of the National Highway Safety and Traffic Act and

7   Caltrans requirements based on Defendants' failure "to provide adequate pedestrian walkways,

8   railings, landings, ramps, and other components which require separation from vehicular traffic,

9   roadways, and thoroughfares prescribed by the Act." FAC, 15:3-5, 16:15-18.  Plaintiffs provide

10  citations to several National Highway Traffic Safety Administration publications, the Caltrans

11  Mission Statement, and a Caltrans press release relating to improvements made on Interstate 5 to

12  support their assertion that these violations are actionable.  FAC, 15:7-16:10, 16:20-17:19.

13         Plaintiffs have not demonstrated that there is a private right of action for violation of any of

14  these provisions.  Moreover, Plaintiffs have not alleged any injury resulting from the alleged

15  violations.[11]  Plaintiffs have had ample opportunity to allege an injury to support standing.  In its

16  Order, this Court dismissed both causes of action noting that Plaintiffs had neither identified any

17  supporting authority nor any injury they suffered as a result of any violation of that authority.

18  Moreover, in their Motion to Dismiss Defendants noted that Plaintiffs made no attempt to allege any

19  injury.  Yet Plaintiffs have made no attempt to allege or otherwise argue that they suffered any injury

20  as a result of the purported violations.  The record makes clear that they cannot do so.  Plaintiffs'

21  clauses of action for violations of the NHSTA and Caltrans Requirements is dismissed without leave

22  to amend.

23  //

24  //

---

25  [11] Plaintiffs distance themselves from the proposition that there is a private right of action under any of these provisions in

26  their Opposition, responding to Defendants' assertion that there is no private right of action under the National Highway
    Traffic Safety Act by stating:  "That may be, however - … the information contained[in the NHSTA websites] can be used

27  to prove that the OCJV has an extraordinarily cavalier attitude when it comes to commingling children and the elderly
    among 18-wheelers."  Opposition, 14.  Plaintiffs do not respond to Defendants' assertion that there is no private right of

28  action to support the purported Caltrans requirements.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**6.      Breach of Contract**

**a.      Legal Background**

The elements of a cause of action for breach of contract in California are:  (1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by defendant; and (4) damages.  *First Commercial Mortg. Co. v. Reece*, 89 Cal.App.4th 731, 745, 108 Cal.Rptr.2d 23 (2001).  "There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract."  *Harm v. Frasher*, 181 Cal.App.2d 405, 417, 5 Cal.Rptr. 367 (1960).  A breach of contract may be established on the basis of either an express provision of the contract or on the implied covenant of good faith and fair dealing.  *See Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal.App.4th 44, 55, 122 Cal.Rptr.2d 267 (2002) ("every contract imposes upon each party a duty of good faith and fair dealing in the performance of the contract such that neither party shall do anything which will have the effect of destroying or injuring the right of either party to receive the fruits of the contract").  An implied covenant of good faith and fair dealing cannot contradict the express terms of a contract.  *Id.* (*Citing Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 374, 6 Cal.Rptr.2d 467, 826 P.2d 710 (1992)).  Further, because "the implied covenant operates to protect the express covenants or promises of [a] contract … [it] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of [the parties'] agreement."  *McClain v. Octagon Plaza, LLC*, 159 Cal.App.4th 784, 806, 71 Cal.Rptr.3d 885 (2008).

"Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specifity."  *Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal.App.4th 1, 5, 58 Cal.Rptr.3d 54 (2007).  Thus, to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated.  *See Lingad v. Indymac Fed. Bank*, 682 F.Supp.2d 1142, 1154 (2010).

**b.      Application to Facts**

The Court dismissed Plaintiffs' initial Complaint for failure to identify any factual basis underlying any express or implied contractual duty owed by Defendants.  In the FAC, Plaintiffs state

that they are unaware of any of the terms and conditions of their contract, because they cannot find those terms on www.ticketmaster.com, except for the words:  "Rain or Shine."  FAC, 19:28-20:3. Without providing contractual terms, Plaintiffs allege that a traffic control plan and adequate parking were necessary for the Concert.  FAC, 20:28-29.  Plaintiffs plead that "[a]ll the many, many Plaintiffs (1) had a Ticket…, (2) timely arrived to the Venue for admission, (3) were directed by the Defendants in all sorts of weird directions through a maze of gridlocked cars to get an additional $25 per car thereby denying them admission to the Venue which they paid handsomely to enter, (4) and suffered damages but-for these Defendants' greed and insistence that they go to the overflow parking lot and other mismanaged facilities.  Plaintiffs wasted money on Tickets that weren't honored by these Defendants."  *Id*. at 20:6-12.  However, Plaintiffs also allege that they, the Missuds, purchased two tickets, only one of which was timely honored.  *Id*. at 19, 21:22.  In their Opposition, Plaintiffs clarify that Patrick took BART to the Coliseum and had his ticket timely honored, whereas Julie drove her car, became stuck in traffic, and missed the vast majority of the Concert.  Opposition, 13.

In the absence of the contractual provisions, the Court cannot conclude that, by virtue of Plaintiffs' tickets, Plaintiffs were entitled to anything other than admission to the venue when their tickets were presented at the entry gate.[12]  Plaintiffs Opposition makes clear that both tickets were accepted for admission upon their presentation at the entry gate, although because of the traffic jam one of the tickets could not be presented until the Concert was nearly over.  *Id*.  Without the contractual provisions, Court cannot conclude that Plaintiffs have stated a claim for breach of an express provision of the contract based on the allegation that Defendants failed to provide parking or traffic control in such a way that significantly delayed, or even prevented, access to the venue for those who drove expecting to be able to use the Coliseum's parking lot.

The Court also cannot conclude that Plaintiffs have stated a claim for a breach of the covenant of good faith and fair dealing.  Plaintiffs essentially allege that Defendants constructively prevented Plaintiffs from attending the Concert, the purpose of their contract, by mismanaging the traffic in their parking lots and by selling tickets to more patrons than they could expect to provide parking for.  To

---

[12] Plaintiffs do not even directly plead this term of their contract.  Rather, Plaintiffs imply that arrival in the vicinity of the Coliseum should be sufficient.

United States District Court
Northern District of California

United States District Court
Northern District of California

find a breach of the covenant of good faith and fair dealing on this theory, the Court would have to

conclude that Defendants were obligated by the contract to provide parking and traffic control.  *See*

*McClain*, 159 Cal.App.4th at 806, 71 Cal.Rptr.3d 885 (because "the implied covenant operates to

protect the express covenants or promises of [a] contract … [it] cannot impose substantive duties or

limits on the contracting parties beyond those incorporated in the specific terms of [the parties']

agreement").  On this record, the Court cannot.

Accordingly, Plaintiffs' breach of contract claim is dismissed with prejudice.  As Plaintiffs

have pled that they are unable to locate the terms of their contract, leave to amend would be futile.

### 7.   Negligence

#### a.   Legal Background

##### i.   General Considerations

To state a claim for negligence, a plaintiff must allege:  (1) the defendant's legal duty of care

to the plaintiff; (2) breach of that duty; (3) causation; and (4) resulting injury to the plaintiff.  *Merrill*

*v. Navegar, Inc.*, 26 Cal.4th 465, 500, 110 Cal.Rptr.2d 370, 28 P.3d 116 (2001).  The existence of a

duty is a question of law to be determined by the court.  *Id*. at 501.

##### ii.   The Economic Loss Rule

"[T]he economic loss rule prevents the law of contract and the law of tort from dissolving one

into the other."  *Robinson Helicopter*, 34 Cal.4th at 988, 22 Cal.Rptr.3d 352, 102 P.3d 268.  It

"requires a purchaser to recover in contract for purely economic loss due to disappointed expectations,

unless he can demonstrate harm above and beyond the broken contractual promise."  *Id*.  Tort

damages have been permitted in contract cases where a breach of duty directly causes physical injury,

for breach of the covenant of good faith and fair dealing in insurance contracts, for wrongful

discharge in violation of public policy, and where the contract was fraudulently induced.  *Erlich*, 21

Cal.4th at 551-52, 87 Cal.Rptr.2d 886, 981 P.2d 978.  In each of those cases, the duty that gives rise to

tort liability is either completely independent of the contract or arises from conduct that is both

intentional and intended to harm.  *Id*. at 552.  In addition, in the products liability context the rule may

26

be overcome by allegations of personal injury or damages to property aside from the defective product.  *See Robinson Helicopter*, 34 Cal.4th at 988, 22 Cal.Rptr.3d 352, 102 P.3d 268.

### b.   Application to Facts

Plaintiffs negligence claim rests on the following theories:  (1) Defendants breached their duty to provide adequate safe parking and traffic control by requiring Plaintiffs to park in an expensive and muddy overflow lot; (2) Defendants breached their duty to provide access to the Coliseum by creating a traffic jam through their attempts to collect a $25 fee for parking; and (3) Defendants breached their duty to maintain the overflow lot in a safe condition by leaving a number of hazards exposed, such as rusty barbed wire, muddy ruts, and collapsed chain link fences.  FAC, 17:22-19:8, 25:10-15.[13] However, Plaintiffs have not alleged any damage or other injury arising from any breach or any alleged duty except Defendants' duty to provide adequate parking.  That is, Plaintiffs have not alleged any harm caused by the hazardous conditions in the overflow lot.  Rather, Plaintiffs claims are essentially (1) that the overflow lot is too far from the Coliseum, such that Patrick, who is no longer a plaintiff in this action, suffered leg pain from covering the distance, and (2) that the Coliseum did not provide sufficient parking. [14]

However, in spite of an opportunity to amend their complaint and a second round of briefing, Plaintiffs have still failed to identify any authority to support the proposition that Defendants were under any duty to provide adequate parking that arose independently from the contract.  Rather,

---

[13] In pleading their negligence cause of action, Plaintiffs also state that Defendants breached their covenant of good faith and fair dealing and fraudulently induced plaintiffs into paying hard-earned wages to sit in traffic for hours.  These claims are not negligence claims, and are discussed in other sections of this Order.

[14] Plaintiffs invoke, in another portion of their FAC, the doctrine of res ipsa loquitur.  FAC, 21:2-4.  Res ipsa loquitur is an evidentiary rule for "determining whether circumstantial evidence of negligence is sufficient."  *Brown v. Poway Unified School Dist.*, 4 Cal. 4th 820, 825, 15 Cal.Rptr.2d 679, 843 P.2d 624 (1993).  "In order to invoke res ipsa loquitur, the plaintiff has the burden to establish three conditions:  (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff."  *Howe v. Seven Forty Two Co., Inc.*, 189 Cal.App.4th 1155, 1161, 117 Cal.Rptr.3d 126 (2010) (citations omitted).  Plaintiffs allege, in essence, that something under Defendants' control went wrong, causing the traffic jam.  Plaintiffs do not identify any agent or instrumentality within Defendants control.  Moreover, Plaintiffs cannot allege that Defendants exercised exclusive control over the public roadways surrounding the Coliseum or even the parking lots themselves, as the independent action of any driver in the parking lot or on the roadway could cause a traffic jam by blocking the roadway or access to the parking lot.  Put another way, the Court cannot infer that Defendants were negligent because there was a traffic jam in the vicinity of the Coliseum at the time of the Concert, or even because the parking lot was not accessible during the Concert.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiffs ignore Defendants' argument, made in their Motion to Dismiss, that Plaintiffs have not

2    alleged a breach of any duty arising independently of the contract.  *See* Motion to Dismiss, 19.

3    Moreover, Plaintiffs have not alleged that the contract provided any duty to provide adequate parking.

4    Finally, the only injury alleged under this negligence theory is that Plaintiffs' expectations under the

5    contract were frustrated.  Because Plaintiffs have failed to remedy the defects of their Complaint, their

6    negligence cause of action is dismissed without leave to amend.

7                    **8.      Fraudulent Inducement**

8                           **a.      Legal Background**

9                                  **i.      General Considerations**

10           "Fraud in the inducement is a subset of the tort of fraud.  It 'occurs when ''the promisor knows

11   what he is signing but his consent is induced by fraud, mutual assent is present and a contract is

12   formed, which, by reason of the fraud is voidable.'''"  *Hinesley v. Oakshade Town Ctr.*, 135

13   Cal.App.4th 289, 294-295, 37 Cal.Rptr.3d 364 (2005) (quoting *Rosenthal v. Great Western Fin.*

14   *Securities Corp.*, 14 Cal.4th 394, 415, 58 Cal.Rptr.2d 875, 926 P.2d 1061 (1996)).  "The elements of

15   fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or

16   knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting

17   damage."  *Id.* at 294 (citing *Lazar*, 12 Cal.4th at 638, 49 Cal.Rptr.2d 377, 909 P.2d 981).  To plead a

18   claim for fraud in the inducement, Plaintiffs' allegations must be sufficiently detailed to meet the

19   heightened Rule 9(b) pleading standard for fraud.  *Parino*, 838 F.Supp.2d at 906.

20                                 **ii.      The Economic Loss Rule**

21           The economic loss rule does not bar a properly pled fraudulent inducement claim:  "'[I]t has

22   long been the rule that where a contract is secured by fraudulent representations, the injured party may

23   elect to affirm the contract and sue for fraud."  *United Guar. Mortg. Indem. Co.*, 660 F.Supp.2d at

24   1188 (quoting *Lazar*, 12 Cal.4th at 645, 49 Cal.Rptr.2d 377, 909 P.2d 981).

25                           **b.      Application to Facts**

26           The FAC rests on the same theory as the original Complaint.  That is, Defendants oversold the

27   concert knowing that they did not have adequate parking to accommodate 69,000 ticketed invitees.

28

                                           28

United States District Court
Northern District of California

1    Defendants misrepresented that they could accommodate each ticketed guest by selling 69,000 tickets.

2    Moreover, by selling the tickets they guaranteed admission to the Concert upon timely arrival.

3    Plaintiffs relied on those representations by buying tickets.  Plaintiffs have not added any allegations

4    to the FAC concerning any statements made by Defendants, either through advertisements or directly

5    to individuals.  Instead, Plaintiffs rely solely on the implications of a ticket sale.  Moreover, Plaintiffs

6    make clear in their briefing that they do not mean timely arrival at the gates of the Coliseum, but

7    rather timely arrival in the vicinity of the Coliseum by car, as opposed to by BART or by some other

8    means of transit. *See* FAC, 19:20-22 (stating that one of the Missuds' tickets was timely honored),

9    Opposition, 13, 15 (stating that Patrick took BART to the Coliseum whereas Julie drove, parked in the

10   overflow lot, and missed almost all of the concert after sitting in traffic for upwards of three hours).

11   In the absence of any alleged representations relating to whether Plaintiffs would be able to park at the

12   venue, the amount of time it would take to park, or that parking would be available regardless of

13   Plaintiffs' arrival time, the Court cannot conclude that Plaintiffs have stated a claim for fraudulent

14   inducement.  That is, a promise to provide parking, regardless of arrival time, cannot be implied from

15   sale of a ticket for a seat at an event without more.  Plaintiffs have already been afforded an

16   opportunity to plead, to the specificity required by Rule 9(b), particular false statements.  As it is now

17   apparent that they cannot do so, Plaintiffs' fraudulent inducement cause of action is dismissed without

18   leave to amend.

19            **9.    UCL**

20                 **a.    Legal Background**

21        The UCL prohibits "unfair competition," which is defined as any "unlawful, unfair or

22   fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  A claim may be brought under

23   the UCL "by a person who has suffered injury in fact and has lost money or property as a result of

24   unfair competition."  Cal. Bus. & Prof. Code § 17204.  Therefore, to establish standing under the UCL

25   a plaintiff must "(1) establish a loss or deprivation of money sufficient to qualify as injury in fact, i.e.,

26   *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair

27   business practice … that is the gravamen of the claim."  *Lawther v. OneWest Bank, FSB*, 2012 WL

28

298110, at *23 (N.D. Cal. Feb. 1, 2012) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 337, 120 Cal.Rptr.741, 246 P.3d 877 (2011)).

To establish a violation of Section 17200, a plaintiff may establish a violation under any one of three prongs. To state a cause of action based on an "unlawful" business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law. *People v. McKale*, 25 Cal.3d 626, 635, 159 Cal.Rptr. 811, 602 P.2d 731 (1979). A "fraudulent" business act or practice is one in which members of the public are likely to be deceived. *Weinstat v. Dentsply Intern., Inc.*, 180 Cal.App. 4th 1213, 1223 n.8, 103 Cal.Rptr.3d 614 (2010) (citations omitted). "'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but only requires a showing that members of the public 'are likely to be deceived.'" *Olsen v. Breeze*, 48 Cal.App.4th 608, 618, 55 Cal.Rptr.2d 818 (1996). UCL claims premised on fraudulent conduct trigger the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir.2009).

Finally, while there is disagreement among California courts regarding the definition of "unfair" business practices, three tests have been applied, as the court in *Phipps v. Wells Fargo* explains:

> In consumer cases, such as this, the California Supreme Court has not established a definitive test to determine whether a business practice is unfair. *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal.App.4th 247, 256, 106 Cal.Rptr.3d 46 (2010). A split of authority has developed among the California Courts of Appeal, which have applied three tests for unfairness in consumer cases. *Drum*, 182 Cal.App.4th at 256, 106 Cal.Rptr.3d 46.
>
> The test applied in one line of cases requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Drum*, 182 Cal.App.4th at 256, 106 Cal.Rptr.3d 46 (citing *Bardin v. Daimlerchrysler Corp.*, 136 Cal.App.4th 1255, 1260–1261, 39 Cal.Rptr.3d 634 (2006); *Davis v. Ford Motor Credit Co.*, 179 Cal.App.4th at 581, 595–596, 101 Cal.Rptr.3d 697 (2009); *Gregory v. Albertson's Inc.*, 104 Cal.App.4th 845, 854, 128 Cal.Rptr.2d 389 (2002).
>
> . . .
>
> A second line of cases applies a test to determine whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and

United States District Court
Northern District of California

30

1  requires the court to weigh the utility of the defendant's conduct against the gravity of the

2  harm to the alleged victim." *Drum*, 182 Cal.App.4th at 257, 106 Cal.Rptr.3d 46 (citing

   *Bardin*, 136 Cal.App.4th at 1260, 39 Cal.Rptr.3d 634; *Davis*, 179 Cal.App.4th at 594–

3  595, 101 Cal.Rptr.3d 697)).

4     . . .

5  The test applied in a third line of cases draws on the definition of "unfair" in section 5 of

   the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that "(1) the

6  consumer injury must be substantial; (2) the injury must not be outweighed by any

7  countervailing benefits to consumers or competition; and (3) it must be an injury that

   consumers themselves could not reasonably have avoided." *Drum*, 182 Cal.App.4th at

8  257, 106 Cal.Rptr.3d 46 (citing *Davis*, 179 Cal.App.4th 597–598, 101 Cal.Rptr.3d 697;

9  *Camacho v. Automobile Club of Southern California*, 142 Cal.App.4th 1394, 1403, 48

   Cal.Rptr.3d 770 (2006)).

10

11 2011 WL 302803, at *16 (E.D.Cal., Jan. 27, 2011).

12                    **b.      Application to Facts**

13         As discussed below, Plaintiffs' UCL claim, relying on the same facts and theories set forth in

14 the original Complaint, is dismissed without leave to amend.

15                        **i.      Standing**

16         Plaintiffs allege that Defendants engaged in fraudulent acts by selling more tickets to the

17 concert than they were capable of accommodating and by advertising the concert in a way that misled

18 the putative class of "Plaintiffs-Invitees" to believe that their tickets would be honored.  Plaintiffs

19 allege that they suffered damage as a result.  Reading the Complaint in the light most favorable to

20 Plaintiffs, they have standing to assert a claim under the UCL on the theory that the concert was

21 oversold because they allegedly suffered economic injury, the lost value of one of the two tickets they

22 purchased, because Defendants sold tickets to more people than they were capable of accommodating.

23 However, Plaintiffs still do not have standing to assert a UCL claim on a theory of misleading

24 advertising because Plaintiffs still have not alleged that they purchased their tickets, or otherwise

25 suffered economic injury, in reliance on any of the unspecified misleading advertising.  Indeed, they

26 cannot identify any advertisement that they were aware of, instead stating that they "learned of the

27 Concert through some means of advertisement" because the performer "Bono did not personally call"

28

1   each person who bought a ticket to the event.  FAC, 23:5-7.  Accordingly, Plaintiffs claim premised

2   on the misleading advertising theory is dismissed without leave to amend.

### ii.   Unlawful Prong

4   In its previous Order, the Court stated:

Plaintiff alleges that he suffered injury "[a]s a result of Defendants' unfair, unlawful and
deceptive acts."  Plaintiff fails to allege that Defendants violated any law by overselling the
concert or through their allegedly misleading advertising.  Moreover, Plaintiff has failed to
plead that Defendants violated any other law.  To state a cause of action, Plaintiff must do so.
Plaintiff has not pled a cause of action under the unlawful prong.  Plaintiff will be given leave
to amend.

10   Order, 35.  In spite of the opportunity to amend their Complaint, Plaintiffs restated their allegations

11   that Defendants knowingly oversold the Concert without any attempt to plead that Defendants'

12   conduct violated any other law.  FAC, 23:8-11.  The remainder of the FAC makes clear that the basis

13   for the theory is Defendants inability to provide sufficient parking for a crowd of that size.  Once

14   again, the UCL claim under the unlawful prong is dismissed.  Plaintiffs will not be given leave to

15   amend because further amendment would be futile.

### iii.   Fraudulent Prong

17   Plaintiffs amend their Complaint to include a legal argument, but no additional factual

18   allegations, in support of their UCL claim under the fraudulent prong.  FAC, 23:12-16.  Presumably,

19   Plaintiffs rely on the same factual allegations set forth in their fraudulent inducement claim.

20   However, Plaintiffs still have not pled, to the standard required by Rule 9(b), that Defendants made

21   any statement that would have deceived the public into believing that they would be able to drive to

22   the Coliseum and park their car regardless of their time of arrival.  Rather than do so, explicitly

23   responding to two footnotes in the Court's prior Order, Plaintiffs plead that reasonable access is as

24   necessary as clean air, potable water, and safe premises.  FAC, 23-24 n.9.  However, Plaintiffs still

25   make no attempt to address their failure to plead, noted by the Court in one of the footnotes Plaintiffs

26   explicitly respond to, facts to support their conclusory allegation that the only means of "reasonable

27   access to the Venue" was by driving.  *See* FAC, 23-24 n.9; Order, 36 n.18.  Indeed, Plaintiffs'

28

Opposition makes clear that BART provided an alternative means of access that enabled Patrick to timely access the venue.  Opposition, 13.  Thus, Plaintiffs still have not pled facts to justify their conclusion that Defendants oversold the event because they could not provide parking for attendees.  As discussed above, and in light of Plaintiffs' footnote, the Court concludes that Plaintiffs cannot do so.  The UCL claim under the fraudulent prong is dismissed without leave to amend.

To reach a contrary result on this record, the Court would be required to conclude as a matter of law that by selling tickets to attend an event, without making any representations whatsoever, Defendants could have promised to provide parking to each ticketholder regardless of whether or not there were other reasonable means of accessing the event.  It cannot do so.

### iv.    Unfair Prong

Plaintiffs allege that Defendants lack of adequate parking and traffic control measures created a traffic jam, preventing emergency personnel from being able to use the roads surrounding the Coliseum and putting thousands of people in peril.  FAC, 23:16-25.  This does not cure the deficiencies in their Complaint.  First, Plaintiffs still have made no effort to tether their public policy argument to any specific constitutional, statutory, or regulatory provisions.  Second, as discussed above, Plaintiffs have not alleged that the business practices related to ticket sales, selling tickets to more individuals than Defendants could provide parking for, was immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers in light of Plaintiffs' failure to plead that Defendants made any indication parking would be provided for all ticketed patrons.  To the extent Defendants disregard for any collateral effects of the lack of parking could qualify as such conduct, Plaintiffs have not alleged that any person suffered actual injury, aside from inability to attend the concert, as a result of the traffic jam.  Finally, as to the third formulation of the test, Plaintiffs still have not pled that they could not have avoided the alleged injury.  As noted above, Plaintiffs have not pled that they could not access the Coliseum using other means of transportation.  In light of Plaintiffs failure to address the deficiencies in their Complaint, their UCL claim is dismissed without leave to amend.

//

United States District Court
Northern District of California

**VI.    CONCLUSION**

For the foregoing reasons, the FAC is dismissed without leave to amend.  The Motion to Strike is denied as moot.  The Clerk shall close the file.

IT IS SO ORDERED.

Dated: June 27, 2013

_____

JOSEPH C. SPERO
United States Magistrate Judge